**AFFIRM; and Opinion Filed June 26, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-11-01338-CV**

## IN THE MATTER OF THE MARRIAGE OF C.A.S. AND D.P.S

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-53871-2009**

## OPINION

Before Justices Lang-Miers and Fillmore[1]
Opinion by Justice Fillmore

Daniel Silvey (Daniel) appeals from a divorce decree dissolving the marriage between him and Cynthia Silvey (Cynthia). In three issues, Daniel argues the trial court erred in dividing the marital property, by granting the divorce on fault grounds, and by failing to make sufficient findings of fact. We affirm the trial court's judgment.

## Background

Daniel and Cynthia married in 1999 and separated on March 23, 2009 when Cynthia moved out of the marital home. Cynthia filed for divorce in August 2009 alleging irreconcilable differences but, shortly before trial, filed an amended petition asserting Daniel had committed adultery and seeking a disproportionate share of the community estate. The property division

---

[1] Justice Mary Murphy was on the panel and participated at the submission of this case but, due to her retirement from this Court on June 7, 2013, did not participate in the issuance of this Opinion. *See* TEX. R. APP. P. 41.1(a), (b).

issues were tried to the bench over the course of four nonconsecutive days between April and July 2011.

On July 6, 2011, the trial court sent a letter to the parties stating the divorce was granted on fault grounds and setting out the division of the marital property. On July 22, 2011, Daniel filed a request for findings of fact and conclusions of law pursuant to rules of civil procedure 296 and 297 and, on August 1, 2011, filed a supplemental request for findings of fact and conclusions of law pursuant to section 6.711 of the family code. Daniel filed a motion for new trial on August 5, 2011, a notice of past due findings of fact and conclusions of law on August 12, 2011, and a notice of appeal on October 3, 2011.

On October 13, 2011, the trial court signed a final decree of divorce that specifically divided certain of the community assets and liabilities and ordered that any of the community assets not specifically divided would be divided through alternate selection by Cynthia and Daniel. On November 14, 2011, the trial court made findings of fact and conclusions of law pursuant to section 6.711 of the family code and rules of civil procedure 296 and 297. The trial court found that Daniel had committed adultery and that the divorce was granted on that basis. The trial court also found that Daniel "made a game of this divorce. On the surface it appears that he has made a game of the dissolution of his business, and such conduct on his part constitutes a 'mockery of the judicial system.'" The trial court valued a number of the specifically divided assets, as well as some of the assets that were to be divided by alternate selection. Our review of the trial court's findings indicates the marital assets that were specifically divided and valued by the trial court equal $1,646,683.10. Cynthia was awarded $1,334,958.10, or eighty-one percent, of these assets, and Daniel was awarded $311,735.00, or nineteen percent, of these assets. The trial court also listed the factors it considered in making a just and right division of the community estate.

On December 12, 2011, Daniel requested the trial court make additional findings, asserting his counsel had not been notified of the trial court's findings of fact and conclusions of law until December 3, 2011. Daniel specifically requested the trial court make findings as to:

A. Whether adultery of [Daniel] was at fault for causing the break up of the parties' marriage.

B. Whether the marriage became insupportable because of discord or conflict of personalities that destroyed the legitimate ends of the marital relationship and prevented any reasonable expectation of reconciliation.

C. Whether any conduct of [Daniel] as alleged in paragraph 9 of [Cynthia's] Second Amended Petition for Divorce supports the award of a disproportionate share of the community estate in favor of Cynthia.

Daniel specifically requested nineteen additional findings relating to these three subjects.

On January 26, 2012, the trial court signed an amended decree of divorce that did not change the division of community property, but awarded Daniel certain property as his separate property. On February 15, 2012, Daniel again requested findings of fact and conclusions of law and, on March 14, 2012, filed a notice of past due findings of fact and conclusions of law. The trial court did not make any additional findings or conclusions.

## Findings of Fact and Conclusions of Law

In his third issue, Daniel contends the trial court erred by failing to make sufficient findings of fact, by failing to timely mail its findings to counsel, and by failing to make additional findings.[2]

Daniel first asserts the trial court's findings failed to comply with section 6.711(a) of the family code because the findings "omit evaluation findings for a third of the items divided in the

---

[2] Daniel's complaints are directed toward the findings of fact and conclusions of law made by the trial court on November 14, 2011. Daniel does not complain about the trial court's failure to enter findings of fact and conclusions of law after the amended divorce decree was signed on January 26, 2012. Further, in his February 16, 2012 request for findings of fact and conclusions of law filed after the amended judgment, Daniel did not request specified additional findings and, therefore, failed to meet the requirements for a request for additional findings. *See* TEX. R. CIV. P. 298; *Heard v. City of Dallas*, 456 S.W.2d 440, 445 (Tex. Civ. App.—Dallas, 1970, writ ref'd n.r.e.) (op. on reh'g); *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 255–56 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)

decree, including significantly, [Daniel's] tax liability." Daniel's brief contains no further argument pertinent to this complaint, and we question whether it had been adequately briefed. *See* TEX. R. APP. P. 38.1(h), (i). However, we will address the complaint as to the tax liability, the only specific asset or liability raised by Daniel on appeal.

Section 6.711(a) of the family code provides that in a suit for dissolution of marriage, on request by a party, the court shall state in writing its findings of fact and conclusions of law concerning (1) the characterization of each party's assets, liabilities, claims, and offsets on which disputed evidence has been presented, and (2) the value or amount of the community estate's assets, liabilities, claims, and offsets on which disputed evidence has been presented. TEX. FAM. CODE ANN. § 6.711(a) (West 2006). The trial court apportioned the parties' 2009 and 2010 tax liability to Daniel. As to the tax liability, Daniel testified he estimated the tax liability for 2009 was $40,000 and for 2010 was $20,000. Cynthia testified she had been told there was a tax debt for 2009 and 2010, but had not been provided any documents to substantiate that claim. Based on the check register, Cynthia believed $240,000 had been paid toward the 2009 tax liability and that there was an additional $75,000 credit carried forward from the 2008 tax return to be applied to the 2009 tax liability. Daniel agreed that approximately $300,000 had been paid toward the 2009 tax liability. Because the amount of the tax liability was undisputed, the trial court was not required to make a finding as to the amount. *See* TEX. FAM. CODE ANN. § 6.711(a); *Jackson v. Jackson*, No. 03-10-00736-CV, 2011 WL 3373290, at *3 (Tex. App.—Austin Aug. 3, 2011, no pet.) (mem. op.).

Daniel next contends the trial court erred by failing to timely mail its November 14, 2011 findings to Daniel's counsel and by failing to make additional findings as requested by Daniel on December 12, 2011. Daniel argues the original findings fail to (1) state whether the trial court found that adultery caused the dissolution of the marriage or related to pre- or post-separation

conduct, (2) state the basis for the trial court's award to Cynthia of more property than she requested, and (3) contained no explanation for the trial court's "harsh rebuke" that Daniel had made a game of the divorce and the dissolution of his business and that his conduct constituted a "mockery of our judicial system." Daniel asserts he is "left guessing" as to the basis for the trial court's ruling and cannot adequately address the findings on appeal. Daniel's complaints necessarily relate to the trial court's failure to make additional findings pursuant to rule of civil procedure 298. *See Moore v. Moore*, 383 S.W.3d 190, 200–01 (Tex. App.—Dallas 2012, pet. denied) (recognizing distinction between findings of fact under section 6.711 of the family code and findings of fact under rules of civil procedure).

Rule of civil procedure 298 provides that, after a trial court files original findings of fact and conclusions of law, "any party may file with the clerk of the court a request for specified additional or amended findings or conclusions. The request for these findings shall be made within ten days after the filing of the original findings and conclusions by the court." TEX. R. CIV. P. 298. When a party makes an untimely request for additional findings and conclusions, the party waives the right to complain on appeal of the trial court's refusal to enter the additional findings or conclusions. *Edgewater Seed Market v. Magnolia Indep. Sch. Dist.*, No. 11-07-00136-CV, 2008 WL 4512851, at *2 (Tex. App.—Eastland Oct. 9. 2008, no pet.) (mem. op.); *Cities Servs. Co. v. Ellison*, 698 S.W.2d 387, 390 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). In this case, Daniel failed to file his request for additional findings of fact and conclusions of law within ten days after the trial court signed the original findings of fact and conclusions of law. Although Daniel claims he was prevented from making a timely request for additional findings by the trial court's failure to provide timely notice of the filing of the findings of fact and conclusions of law, he did not obtain a ruling from the trial court as to the date he received notice. *See* TEX. R. CIV. P. 306a; *Florance v. State*, 352 S.W.3d 867, 873 (Tex. App.—

Dallas 2011, no pet.). Other than Daniel's contention in his request for the additional findings that he had not received notice of the original findings, the record is silent as to when either Daniel or his counsel was notified of the filing of the findings and conclusions.

Daniel had the burden to preserve any error in the trial court. *See* TEX. R. APP. P. 33.1(a). His recitation in his request for additional findings and in his brief that he did not receive notice of the findings of fact and conclusions of law is not sufficient to preserve error.[3] We cannot conclude Daniel preserved his right to complain on appeal about the trial court's failure to make the additional findings.

Further, even if Daniel had preserved this issue for appeal, we conclude he has not shown the trial court abused its discretion by failing to enter the requested additional findings. Additional findings are not required if the original findings and conclusions properly and succinctly relate the ultimate findings of fact and conclusions of law necessary to apprise the party of information adequate for the preparation of the party's appeal. *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 412 (Tex. App.—Fort Worth 2006, pet. denied). An ultimate fact is one that would have a direct effect on the judgment. *Id.* There is no reversible error if the refusal to file additional findings does not prevent a party from adequately presenting an argument on appeal. *Id.* The controlling issue is whether the circumstances of the particular case require the party to guess at the reasons for the trial court's decision. *White v. Harris-White*, No. 01-07-00521-CV, 2009 WL 1493015, at *6 (Tex. App.—Houston [1st Dist.] May 28, 2009, pet. denied) (mem. op. on reh'g).

The ultimate issue in this case is the just and right division of the estate. *See id.* at *5. The trial court divided the marital property and made findings of fact and conclusions of law

---

[3]*See Goodfellow v. Goodfellow*, No. 03-01-00633-CV, 2002 WL 31769028, at *8 (Tex. App.—Austin, Dec. 12, 2002, no pet.) (not designated for publication).

involving the court's jurisdiction over the parties, the assets and liabilities of the marital estate, Daniel's adultery, Daniel's conduct during the litigation, and other factors the trial court considered in determining a just and right division of the estate. The additional findings requested by Daniel related to (1) whether Daniel's adultery was at fault in the breakup of the marriage, and (2) the factors the trial court considered in dividing the community estate. However, the trial court had already granted the divorce based on fault and found that Daniel had committed adultery. Further, the trial court was not required to make findings regarding the factors it considered in dividing the estate. *See Wallace v. Wallace*, 623 S.W.2d 723, 726 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ dism'd).

We conclude the trial court's findings of fact and conclusions of law are sufficiently specific to allow Daniel to present his complaints on appeal and, accordingly, Daniel was not harmed by the trial court's failure to make the requested additional findings. We resolve Daniel's third issue against him.

## Standard of Review

In his first and second issues, Daniel argues the trial court erred in the division of the marital estate and by granting the divorce on fault grounds. We review both of these issues under an abuse of discretion standard. *See In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.) (most appealable issues in family law cases are evaluated for abuse of discretion). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any reference to guiding rules and principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *see also Gonzalez v. Gonzalez*, 331 S.W.3d 864, 866 (Tex. App.—Dallas 2011, no pet).

A trial court's findings are reviewable for legal and factual sufficiency of the evidence under the same standards that are applied in reviewing evidence supporting a jury's answer. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). In evaluating a

legal sufficiency challenge, we credit evidence that supports the finding if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Newberry v. Newberry*, 351 S.W.3d 552, 555 (Tex. App.—El Paso 2011, no pet.). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. In a factual sufficiency review, we examine all the evidence in the record, both supporting and contrary to the trial court's finding, and reverse only if the finding is so against the great weight of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996) (per curiam); *Newberry*, 351 S.W.3d at 555–56.

In family law cases, legal and factual sufficiency challenges do not constitute independent grounds for asserting error, but are relevant factors in determining whether the trial court abused its discretion. *Moore*, 383 S.W.3d at 198. To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient to support the trial court's decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion, and (2) erred in its application of that discretion. *Moroch*, 174 S.W.3d at 857. We conduct the applicable sufficiency review when considering the first prong of the test. *Id.* We then determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.* A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Id.*

### Fault

In his second issue, Daniel argues the trial court erred by granting the divorce on fault grounds because the evidence is legally and factually insufficient to establish adultery caused the marriage to fail. A trial court "may grant a divorce in favor of one spouse if the other spouse has committed adultery." TEX. FAM. CODE ANN. § 6.003 (West 2006). Adultery means the

"voluntary sexual intercourse of a married person with one not the spouse." *In re S.A.A.*, 279 S.W.3d 853, 856 (Tex. App.—Dallas 2009, no pet.); *see also Ayala v. Ayala*, 387 S.W.3d 721, 733 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Adultery is not limited to actions committed before the parties separated. *Ayala*, 387 S.W.3d at 733; *Bell v. Bell*, 540 S.W.2d 432, 435 (Tex. Civ. App.—Houston [1st Dist.] 1976, no writ). Adultery can be shown by direct or circumstantial evidence. *In re S.A.A.*, 279 S.W.3d at 856; *Newberry*, 351 S.W.3d at 556. However, there must be clear and positive proof and mere suggestion and innuendo are insufficient. *In re S.A.A.*, 279 S.W.3d at 856.

Cynthia testified that, after she moved out of the marital residence, she hoped that she and Daniel would reconcile and she asked Daniel to participate in counseling. However, Daniel failed to participate meaningfully in counseling, and the counselor eventually told Cynthia the marriage was a "lost cause." In June 2009, Cynthia began to suspect that Daniel had committed adultery.

Daniel admitted that he began a personal relationship with Maria Alvarez at the "end of November-December time frame," but "it wasn't until either the last day of January or February when I actually went to visit and – for the first time in 2010, and I wanted to date her at that point." However, in September 2009, Cynthia found a woman's underwear and suitcase in the master bedroom of the martial home. Also in September 2009, a private investigator filmed Daniel and Alvarez kissing and hugging at an airport. In 2010, Daniel and Alvarez spent a number of weekends and took several trips together. Further, although Daniel testified Alvarez later reimbursed him, Daniel also bought Alvarez several expensive gifts.

Although there was conflicting evidence about when the relationship began, Daniel's relationship with Alvarez was undisputed. Accordingly, the evidence is both legally and factually sufficient to support the trial court's finding that Daniel committed adultery, and the

trial court did not abuse its discretion by granting the divorce on fault grounds. We resolve Daniel's second issue against him.

## Property Division

In his first issue, Daniel asserts the trial court erred in dividing the marital estate because it lacked sufficient valuation evidence to make an equitable and reasonable division. Daniel specifically complains the trial court (1) improperly valued the major asset of the estate, (2) lacked sufficient evidence of Cynthia's attorney's fees, (3) failed to value one-third of the assets and debts divided in the decree, (4) improperly valued the real estate and other assets, (5) awarded to Daniel assets that he liquidated, but did not award Cynthia assets that she liquidated, (6) awarded a grossly disproportionate division to Cynthia without a reasonable basis, (7) considered factors in its division that were not pleaded and for which there was no evidence, (8) failed to include unliquidated claims in its division, and (9) made a punitive division of the property.

In a divorce decree, the trial court shall order a division of the parties' estate in a manner that the court deems just and right, having due regard for the rights of each party. TEX. FAM. CODE ANN. § 7.001 (West 2006). The trial court is afforded broad discretion in dividing the community estate, and we must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *Motley v. Motley*, 390 S.W.3d 689, 695 (Tex. App.—Dallas 2012, no pet.).

The property division need not be equal, and a trial court may consider many factors when exercising its broad discretion to divide the marital property. *Murff*, 615 S.W.2d at 699; *Barras v. Barras*, 396 S.W.3d 154, 163 (Tex. App.—Houston [14th Dist.] 2013, no pet. h.). Such factors include the nature of the marital property, the relative earning capacity and business

opportunities of the parties, the parties' relative financial condition and obligations, the parties' education, the size of separate estates, the age, health, and physical conditions of the parties, fault in breaking up the marriage, the benefit the innocent spouse would have received had the marriage continued, and the probable need for future support. *Murff*, 615 S.W.2d at 699; *Barras*, 396 S.W.3d at 163. The party complaining of the division of the community estate has the burden of showing from the evidence in the record that the trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion. *See Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980); *Pappas v. Pappas*, No. 03-12-00177-CV, 2013 WL 150300, at *1 (Tex. App.—Austin Jan. 10, 2013, no pet. (mem. op.); *Vannerson v. Vannerson*, 857 S.W.2d 659, 672 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

*Sufficient Evidence of Partnership Interest*

Daniel first argues there was no or insufficient evidence of the value of the community's interest in a partnership at the time of the divorce and that the interest was improperly valued as of the time of a mediation in 2010. Daniel was one of three partners in GP Holdings, a partnership which controlled Atlas Service Link, a corporate tax accounting and technology consulting firm. At the end of 2009, Daniel's two partners told him that they had formed a new partnership that was buying Atlas Service Link from GP Holdings and Daniel's interest in GP Holdings was being eliminated. GP Holdings also placed $1,115,000 into Daniel's capital account, reflecting its assessment of the value of Daniel's interest in the partnership.

Cynthia testified that Daniel had communicated with her about the capital account and said it contained $1.115 million. Daniel also told her that his share of the profits from the partnership for 2009 would be approximately $1,000,000 and that he determined that number based on a schedule K-1 for the partnership. In October 2010, Cynthia, Daniel, and Daniel's former partners participated in mediation in an attempt to settle the value of marital estate's

–11–

interest in the partnership. At that time, the partnership valued the capital account at $1.115 million.

Daniel offered no contradictory evidence as to the value of the partnership interest, but testified there was a difference between the value of the capital account and the value of his interest in GP Holdings. He admitted a capital account is one method of valuing the interest, but disagreed that it was the correct method to use in this case. He claimed he could not value any interest in the partnership exceeding the amount in the capital account because he had been denied access by the partnership to necessary information. He admitted that an expert he retained agreed with the value placed on the partnership interest by GP Holdings, but contended the expert also was not provided all necessary information.

The value of community assets is generally determined at the date of divorce or as close to it as possible. *Handley v. Handley*, 122 S.W.3d 904, 908 (Tex. App.—Corpus Christi 2003, no pet.); *Grossnickle v. Grossnickle*, 935 S.W.2d 830, 837 (Tex. App.—Texarkana 1996, writ denied). However, "[n]earness in time is a matter left to the discretion of the trial court." *Finch v. Finch*, 825 S.W.2d 218, 223 (Tex. App.—Houston [1st Dist.] 1992, no writ) (trial court did not abuse its discretion by considering land appraisal made one year earlier in dividing real estate on date of divorce); *see also Quijano v. Quijano*, 347 S.W.3d 345, 349–50 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (trial court did not abuse its discretion by considering six-month-old statement to assess value of checking account when that was best evidence of record concerning value of account). In this case, Cynthia provided the trial court with a value of the partnership approximately six months before trial. The partnership had not been active for over two years, and there was no evidence of any activity by the partnership between October 2010 and April 2011 that would have increased the value of the community's interest in the partnership.

Daniel claims the partnership interest was improperly valued, but provided no evidence of what he believed the interest was worth. Generally, a party who does not provide to the trial court any value for the property cannot, on appeal, complain of the trial court's lack of information in dividing the community estate. *Deltuva v. Deltuva*, 113 S.W.3d 882, 887 (Tex. App.—Dallas 2003, no pet.) (op. on reh'g); *Sereno v. Sereno*, No. 13-08-00691-CV, 2010 WL 5541709, at *2 (Tex. App.—Corpus Christi Dec. 30, 2010, no pet.) (mem. op.); *Todd v. Todd*, 173 S.W.3d 126, 129 (Tex. App.—Fort Worth 2005, pet. denied); *Vannerson*, 857 S.W.2d at 670. We conclude the trial court did not abuse its discretion by valuing the partnership interest based on the value of the capital account as of September 2010.

*Attorney's Fees*

Daniel next asserts the trial court lacked sufficient evidence of Cynthia's attorney's fees to support the award of the partnership interest to compensate her for her fees. Daniel argues the evidence failed to establish the hourly rate charged by Cynthia's attorney, the number of hours incurred, or that legal assistant fees were recoverable; the amount of attorney's fees found by the trial court in its findings of fact was more than the amount testified to by the attorney; and the trial court's award of the entire capital account to Cynthia, to compensate her for the attorney's fees, awarded her more than she sought and, therefore, constituted a windfall.[4]

The record shows both parties expended community funds during the pendency of the divorce to pay attorney's fees and, at the time of trial, there were outstanding attorney's fees that had not been paid. The trial court found that, through trial, Cynthia had incurred unpaid fees of

---

[4] Cynthia initially requested she be awarded $658,000 from the capital account. The trial court found Cynthia had outstanding attorney's fees of $164,028.92. Therefore, Daniel contends, the total amount that could have been awarded to Cynthia from the capital account was $822,000. However, Cynthia testified she had also paid attorney's fees to both her former and trial counsel and requested the trial court order Daniel to pay those fees as well. *See Grossnickle,* 935 S.W.2d at 847 (prior payments out of the community estate to attorneys in the divorce action are to be taken into account in the division of the marital estate); *see also Tucker v. Tucker*, No. 13-11-00056-CV, 2013 WL 268937, at *11 (Tex. App.—Corpus Christi Jan. 24, 2013, no pet. h.) (memo. op.).

$164,028.92,[5] while Daniel had incurred unpaid fees of $130,000. The trial court found that "[o]rdering [Daniel] to pay [Cynthia's] attorney's fees would simply result in extended litigation. Rather, it is more simple and fair to award [Cynthia] a larger share of the main assets to compensate her for her attorney's fees."

A trial court may consider reasonable attorney's fees, along with the parties' circumstances and needs, in effecting a just and right division of the estate. *Murff*, 615 S.W.2d at 699; *Carle v. Carle*, 149 Tex. 469, 474, 234 S.W.2d 1002, 1005 (1950); *Mandell v. Mandell*, 310 S.W.3d 531, 542 (Tex. App.—Fort Worth 2010, pet. denied). "[A] decree that the husband pay all of the wife's attorney's fees may be to award him less of the community estate than that awarded to the wife, but that alone does not condemn it. The attorney's fee is but a factor to be considered by the court in making an equitable division of the estate, considering the conditions and needs of the parties and all the surrounding circumstances." *Carle*, 149 Tex. at 474, 234 S.W.2d at 1005; *see also Tedder v. Gardner Aldrich, LLP*, No. 11-0767, 2013 WL 2150081, at *3–4 (Tex. May 17, 2013). Further, as in its decision to award fees as part of the division, the trial court has broad discretion in determining the amount. *Smith v. Grayson*, No. 03-10-00238-CV, 2011 WL 4924073, at *10 (Tex. App.—Oct. 12, 2011, pet. dism'd) (mem. op.) (citing *Murff*, 615 S.W.2d at 698–99).

Cynthia's trial counsel, George Parker, testified he had been licensed to practice law in Texas since May 1976. He has been board certified in family law since 1985 and practices primarily in Collin County, Texas. He is familiar with the qualifications of the other attorneys in his firm and the hourly rates that Cynthia contracted to pay in this case. In Parker's opinion, those rates are usual and customary in and around Collin County for the type of work that has

---

[5] The trial court found that Cynthia owed $44,038.92 to her former attorney, who had intervened in the divorce proceeding seeking the unpaid fees, and $120,000 to her trial attorney. On appeal, Daniel has complained only about the finding that Cynthia owed $120,000 to her trial attorney.

been done in the case. Further, the actions taken by counsel on Cynthia's behalf had been necessary.

In Parker's opinion, the fees in this case were reasonable. In reaching that opinion, Parker considered that he had been retained late in the case and had to digest a lot of information in a short period of time. Further, there were complicated issues surrounding the partnership interest and there "have been some actions that have occurred through the time I've been representing [Cynthia] that have complicated the property."

Parker testified three legal assistants had worked on the case. One of the legal assistants had been with the firm for approximately twenty-two years and was "certified." A second legal assistant had been with the firm for approximately ten years. In Parker's opinion, the tasks performed by the legal assistants were reasonable and necessary and the hourly rate charged for their work was reasonable and customary in and around Collin County.

Cynthia had incurred attorney's fees of $101,255 and had paid either $23,000 or $25,000 toward that amount. Parker anticipated further work would be necessary to complete the case and estimated another $5,000 in attorney's fees would be incurred by Cynthia. However, in closing argument, Parker indicated Cynthia's attorney's fees were over $115,000, "just to us." The record also demonstrates that counsel was required to perform a significant amount of work on the case after trial.

Daniel argues the evidence is insufficient to support the attorney's fee award because Cynthia's attorney did not introduce evidence that the specific hourly rate charged by each attorney and legal assistant was reasonable. Such specificity, however, is not required. *In re W.M.R.*, No. 02-11-00283-CV, 2012 WL 5356275, at *14 (Tex. App.—Fort Worth Nov. 1, 2012, no pet.) (mem. op.). Instead, "[t]o support a request for reasonable attorney's fees, testimony should be given regarding the hours spent on the case, the nature of preparation, complexity of

–15–

the case, experience of the attorney, and the prevailing hourly rates." *Hardin v. Hardin*, 161 S.W.3d 14, 24 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Goudeau v. Marquez*, 830 S.W.2d 681, 683 (Tex. App.—Houston [1st Dist.] 1992, no writ)).  The trial court does not need to hear evidence on each factor but can "look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Hagedorn v. Tisdale*, 73 S.W.3d 341, 353 (Tex. App.—Amarillo 2002, no pet.) (citing *Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 896 (Tex. App.—San Antonio 1996, writ denied)).

Parker's testimony reflected he was familiar with each attorney's and legal assistant's experience and the novelty and difficulty of the issues in this case.  In his opinion the hourly rates charged were reasonable and customary for Collin County.  *See In re A.S.G.*, 345 S.W.3d 443, 451–52 (Tex. App.—San Antonio 2011, no pet.) (attorney's testimony sufficient to support fee award even though she "did not testify to her hourly rate or exact number of hours spent on the case, [but] she did specifically ask for $1,500 in attorney's fees and explained to the trial court their necessity and reasonableness.").  We conclude Parker's testimony is a reasonable basis for the award of attorney's fees.  *See In re A.B.P.*, 291 S.W.3d at 98–99  (concluding attorney's testimony that he believed his fees were reasonable and necessary, that he was familiar with the customary fees in the community, and that he believed his fees fall within that range was sufficient for attorney's fee award); *In re W.M.R.*, 2012 WL 5356275, at *14.

On the record before us, we cannot conclude the trial court abused its discretion by awarding Cynthia a larger share of the "main assets" of the estate in order to compensate her for her attorney's fees.

*Other Alleged Valuation Errors*

Daniel next contends the trial court erred in valuing the community estate because it failed to make findings of fact as to the value of some assets, improperly valued some of the real estate, improperly valued a model train collection, and included liquidated assets in the property awarded to Daniel without doing so for Cynthia.

No Findings on Value

Daniel first argues the trial court lacked sufficient evidence to divide the marital estate because its findings of fact and conclusions of law omit values for twenty-five assets and debts divided in the decree. As set out above, when the value of an asset is not disputed, the trial court is not required to make a finding of that asset's value. *See* TEX. FAM. CODE ANN. § 6.711(a); *Jackson*, 2011 WL 3373290, at *3. In his brief, Daniel does not argue that any of the listed assets had a disputed value. Accordingly, Daniel has failed to establish that the trial court abused its discretion by failing to make a finding as to those assets' values.

Daniel next asserts the trial court's failure to make a finding as to the value of the parties' 2009 and 2010 tax liability "causes the division of net assets awarded to [Daniel] to be understated." However, as set out above, the amount of the parties' tax liability was undisputed and, therefore, the trial court was not required to make a finding as to the value of the liability. Further, there is nothing in the record to demonstrate the trial court did not consider the undisputed value of the tax liability in making the division of the community estate. *See In re S.A.A.*, 279 S.W.3d at 857 ("A divorce court also has authority and discretion to impose the entire tax liability of the parties on one spouse."). Finally, a trial court can appropriately assign tax liability to one party or the other without knowing the exact amount of that liability. *See Kimsey v. Kimsey*, 965 S.W.2d 690, 695 (Tex. App.—El Paso 1998, pet. denied) (concluding appellate court could not determine whether there was manifest abuse of discretion by trial court

–17–

in dividing tax liability equally between parties when parties presented no evidence of amount of potential tax liability); *Mullins v. Mullins*, 785 S.W.2d 5, 7–8 (Tex. App.—Fort Worth 1990, no writ) (concluding trial court acted within its discretion in holding husband responsible for potential income tax liability incurred during marriage); *see also Young v. Young*, 168 S.W.3d 276, 286 (Tex. App.—Dallas 2005, no pet.) (concluding trial court did not err by assigning responsibility for couples' income tax liability to husband where evidence indicated he had failed to report certain income of company found to be husband's alter ego). Consequently, Daniel has not demonstrated the trial court abused its discretion by dividing the community estate without evidence establishing specific amounts for the parties' 2009 and 2010 tax liabilities. *See Quijano*, 347 S.W.3d at 352.

Daniel also asserts the trial court erred by failing to value the reward miles and points awarded to Cynthia. The trial court awarded to Cynthia (1) the Starwood miles and/or points, (2) the American Express air miles and/or points, and (3) all airline miles and/or points in Cynthia's name. The trial court awarded Daniel all air miles not awarded to Cynthia. In its findings of fact, the trial court determined the following reward miles or points were assets of the community estate: (1) American Airlines miles in Cynthia's name (66,937), (2) Southwest Airlines miles in Cynthia's name (no amount), (3) Starwood points (144,867), (4) American Express Membership points (283,047), (5) Visa Celebrity miles in Cynthia's name (13,201), (6) Visa Edge miles in Cynthia's name (0), (7) Visa Chase miles in Cynthia's and Daniel's names (0), (8) Sears miles in Cynthia's name (23,906), (9) American Airlines miles in Daniel's name (177,461), (10) Southwest Airlines miles in Daniel's name (no amount), (11) Delta Airlines miles in Daniel's name (12,439), (12) Hyatt Points in Daniel's name (0), (13) Hilton Points in Daniel's name (6,436), (14) Marriott Points in Daniel's name (112,709), (15) and Visa Chase Atlas points in Daniel's name (253,010). The first eight categories were awarded to Cynthia and

total 531,958 miles and/or points.  Categories (9) through (15) were awarded to Daniel and total 565,055 miles and/or points.

The trial court awarded Daniel over fifty percent of the reward miles and/or points and there was no evidence that any particular program was more valuable than another.  *See Deltuva*, 113 S.W.3d at 887; *Sereno*, 2010 WL 5541709, at *2.  On this record, Daniel has failed to establish the trial court abused its discretion by not placing a value on the reward miles and/or points awarded to Cynthia.

Daniel finally argues the trial court erred by awarding the contents of Cynthia's safety deposit box to her without evidence of the value of the contents of the box.  Cynthia testified the safety deposit box contained her rings and other gifts from Daniel.  Neither Cynthia nor Daniel testified about the value of the items in the safety deposit box.   Accordingly, Daniel has waived his right to complain of the trial court's lack of information in dividing the contents of the safety deposit box.  *Deltuva*, 113 S.W.3d at 887; *Sereno*, 2010 WL 5541709, at *2

On this record, we cannot conclude the trial court abused its discretion by failing to make a specific finding of the value of any of the complained-about assets and liabilities.

Real Estate

Daniel contends the trial court overvalued the real estate awarded to him and undervalued the real estate awarded to Cynthia.  Daniel specifically complains the tax appraisals relied upon by Cynthia cannot be used to determine the fair market value of real estate and, even if the tax appraisals constituted some evidence of the value of the property, they are factually insufficient to support the trial court's findings.

The trial court awarded the marital residence in Plano to Daniel and a rental property in Richardson to Cynthia.  Cynthia offered records from taxing authorities showing the appraised value of the two houses.  The trial court initially sustained Daniel's hearsay objections to the

records. However, the tax appraisal for the Plano house was admitted into evidence without objection during the cross-examination of Daniel's expert witness and showed a value for the Plano house of $471,754. Cynthia testified without objection that she used the information from the tax appraisal districts to "at least partially" form the basis for her opinion concerning the value of the properties. Cynthia believed the value of the Plano house was the tax appraised value of $471,754 and the value of the Richardson house was the tax appraised value of $132,970.

Daniel called Russell Nickell, a residential appraiser, to testify about the value of the two houses. In conducting an appraisal, Nickell reviews the tax records and the tax assessments as well as sales of comparable properties. In Nickell's opinion, a tax assessment is generally a lagging indicator of a house's value. However, the taxing authorities are more accurate now than they were historically because the appraisals are done annually. In Nickell's opinion, sometimes the tax assessments are accurate and sometimes they are not accurate. Nickell agreed that the taxing authorities do not always agree with his appraisals.

Nickell used a sales comparison approach to appraise the two houses. According to Nickell, the Plano house's value is $418,000 and the Richardson house's value is $166,000. In conducting his analysis, Nickell gave the Plano house a fair to average rating. If, however, the house was in average condition, the value could increase by $50,000. Nickell agreed the Plano house was not in a condition to "show" at the time he appraised it.

In its findings of fact, the trial court valued the Plano house at $471,754 and the Richardson house at $132,970. Relying on *Kuehn v. Kuehn*, 594 S.W.2d 158 (Tex. App.—Houston [14th Dist.] 1980, no writ), Daniel asserts the evidence is insufficient to support the trial court's findings.

In *Kuehn*, the Houston Fourteenth Court of Appeals concluded the value placed on real estate for taxation purposes without the participation of the owner could not be used to determine the fair market value of the property. *Id.* at 161. The court based its opinion on the fact the appraisals were hearsay and could not support a finding of fact. *Id.* (citing *Perkins v. Springstun*, 557 S.W.2d 343, 345 (Tex. Civ. App.—Austin 1977, writ ref'd n.r.e.) (hearsay evidence admitted without objection has no probative value)). However, both *Kuehn* and *Perkins* were decided before the adoption of the Texas Rules of Evidence. Rule of evidence 802 now provides that unobjected-to hearsay shall not be denied probative value merely because it is hearsay. TEX. R. EVID. 802; *see also City of Keller*, 168 S.W.3d at 812 n.29. Here, the tax appraisal for the Plano house and Cynthia's testimony about the tax appraisal for both houses was admitted without objection and, therefore, could constitute some probative evidence on which the trial court could have relied. *See Smith*, 2011 WL 4924073, at *11.

Further, this is not a case in which the only evidence supporting the trial court's finding is the tax appraisal. An owner may testify about the market value of her property. *Gulf States Util. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002); *Porras v. Craig*, 675 S.W.2d 503, 504–05 (Tex. 1984). For several years, Cynthia had been engaged in "flipping" houses, which involved buying, remodeling, and then selling a house. She had bought and sold approximately eight houses. Although she relied, in part, on the tax appraisals in reaching an opinion as to the value of the two houses at issue, she was familiar with the market value of houses in the area and was qualified to express her opinion concerning the value of those houses.

Daniel also argues that, in the face of Nickell's testimony, the evidence of the tax appraisals on the houses is factually insufficient to support the trial court's findings. The value of a community asset on which there is disputed evidence is a question of fact. *See* TEX. FAM. CODE ANN. § 6.711(a)(2). As the trier of fact, it was role of the trial court to judge the credibility

of the witnesses, weigh the testimony, accept or reject any testimony, and resolve conflicts in the evidence. *Dewalt v. Dewalt*, No. 14-06-00938-CV, 2008 WL 1747481, at *2 (Tex. App.—Houston [14th Dist.] Apr. 17, 2008, no pet.) (mem. op.) (citing *City of Keller*, 168 S.W.3d at 819); *see also Murff*, 615 S.W.2d at 700. We "will not disturb a trial court's resolution of conflicting evidence that turns on the credibility or weight of the evidence." *Ennis v. Loiseau*, 164 S.W.3d 698, 706 (Tex. App.—Austin 2005, no pet.) (citing *Benoit v. Wilson*, 150 Tex. 273, 281, 239 S.W.2d 792, 796 (Tex.1951)). As long as the evidence falls "within [the] zone of reasonable disagreement," we cannot substitute our judgment for that of the fact finder. *See City of Keller*, 168 S.W.3d at 822.

The trial court heard the conflicting opinions on the value of the houses, rejected Nickell's opinion, and accepted Cynthia's opinion of the value of both houses. On the record before us, we conclude that the evidence of the houses' values was legally and factually sufficient, and in light of the broad discretion vested in the trial court in dividing the property of parties in a divorce, we cannot say that the trial court abused its discretion in its valuation of the Plano and Richardson houses. *See id.*; *Smith*, 2011 WL 4924073, at *11.

Train Collection

Daniel next contends the trial court's valuation of a model train collection was improperly based on acquisition value. Cynthia testified that Daniel budgeted $200 per month for the purchase of trains during the entire marriage. Daniel testified he did not spend his entire budget every month purchasing trains. He also testified that part of the collection had been sold for $1,700, but offered no other evidence of the collection's value. The trial court valued the collection at $8,800. Because Daniel failed to offer any evidence of the train collection's value, he waived his right to complain on appeal about the trial court's valuation of the property. *Deltuva*, 113 S.W.3d at 887; *Sereno*, 2010 WL 5541709, at *2

## Liquidated Assets

Daniel also complains the trial court "recaptured" assets that Daniel liquidated by awarding them to Daniel without doing the same for assets that Cynthia liquidated. According to Daniel, Cynthia operated on a cash basis in 2009 and withdrew a large amount of money from the joint bank account and from a retirement fund. Cynthia admitted she made cash withdrawals from the joint bank account in 2009, but testified the money was used to purchase and repair two houses and that she provided invoices to support the withdrawals. After one of the houses was sold, she used the sales proceeds to pay community debt incurred to rehabilitate the property and then placed the remaining funds into the joint bank account. The other house remained a community asset. Cynthia testified that, at some point in the divorce proceedings, she was "strongly encouraged" by the trial court to withdraw money from a retirement account to pay her attorney's fees. She also withdrew money from community accounts in 2010 to pay her living expenses after Daniel stopped transferring money into the joint bank account and canceled her credit cards. Cynthia denied liquidating any other community assets.

Trial began on April 18, 2011 and was recessed until June 29, 2011. In violation of the trial court's standing order, Daniel liquidated a number of assets, including bank stock warrants, antique cars, part of the model train collection, and part of a retirement account shortly before trial recommenced. Some of the cars were sold to Daniel's friends and family members and some were sold at a loss. Further, in Cynthia's opinion, the bank stock warrants would have been much more valuable in the future than they were when Daniel sold them. Daniel admitted the trial court had not given him permission to liquidate any of the assets. Daniel testified that he used the money to pay attorney's fees, repay loans from his brothers, pay the taxes owed due to the parties' withdrawals from retirement accounts, and for living expenses. Daniel admitted he "missed" that at least some taxes had already been withheld when Cynthia withdrew money from

one of the retirement funds. Further, some of the attorney's fees paid by Daniel were incurred pursuing Daniel's claims against GP Holdings. The trial court awarded any remaining community interest in the assets liquidated by Daniel to Daniel.

The trial court heard evidence that the only assets liquidated by Cynthia were to pay her living expenses and, at the trial court's encouragement, her attorney fees. Daniel, on the other hand, admitted to having liquidated a number of assets during trial without the trial court's permission, did not establish the assets were sold for market value, and did not fully account for the proceeds from the sales. On this record, we cannot conclude that trial court abused its discretion by awarding the assets liquidated by Daniel to him. *See Schlueter*, 975 S.W.2d at 588 (noting one spouse should not suffer just because other spouse has depleted the community estate).

### *Adultery*

Daniel next contends the trial court's finding of adultery does not support a disproportionate division of property because his relationship with Alvarez began after the parties separated and did not constitute fault that caused the breakup of the marriage. As we set out above, adultery does not have to occur pre-separation for it to be a ground for granting a divorce. *See Ayala*, 387 S.W.3d at 732; *Bell*, 540 S.W.2d at 435. Generally, in a fault-based divorce, the trial court may consider the conduct of the errant spouse in making a disproportionate distribution of the marital estate. *See Young v. Young*, 609 S.W.2d 758, 761–62 (Tex. 1980); *Ohendalski v. Ohendalski*, 203 S.W.3d 910, 914 (Tex. App.—Beaumont 2006, no pet.). Accordingly, the trial court's finding of adultery can support the disproportionate division of the community property.

*Unreasonable Division of Property*

Daniel next complains the trial court's disproportionate award to Cynthia is not supported by the applicable factors. A trial court may consider various factors in making a property division. *See Murff*, 615 S.W.2d at 699. In its findings of fact, the trial court stated that, in dividing the martial property, it considered: (1) fault in the breakup of the marriage, (2) fraud on the community, (3) benefits the innocent spouse may have derived from the continuation of the marriage, (4) disparity of earning power of the spouses and their ability to support themselves, (5) health of the spouses, (6) education and future employability of the spouses, (7) community indebtedness and liabilities, (8) tax consequences of the division of property, (9) ages of the spouses, (10) earning power, business opportunities, capacities and abilities of the spouses, (11) nature of the property involved in the division, (12) wasting of community assets by the spouses, (13) credit for temporary support paid by a spouse, (14) misconduct, including violation of the court's standing order, (15) attorney's fees to be paid, (16) the size and nature of the separate estates of the spouses, and (17) creation of community property by the efforts or lack thereof of the spouses.

This record establishes a number of circumstances that justify awarding a disproportionate share of the community estate to Cynthia. First, a disparity in the financial condition and earning capacities of the parties is an important factor in dividing their estate. *Murff*, 615 S.W.2d at 699; *Phillips v. Phillips*, 75 S.W.3d 564, 574 (Tex. App.—Beaumont 2002, no pet.). Cynthia has a bachelor's degree in marketing and, when she married Daniel, was a marketing manager at Sprint. Daniel had bachelor's degrees in accounting and finance and economics and a master's degree in accounting. In 1998, Daniel started his own consulting business and, in October 2001, Cynthia accepted a severance package from Sprint and began working as an "administrative arm" of Daniel's business. Daniel's business subsequently

merged into GP Holdings and, as the business became more successful, Cynthia's services were no longer needed. In 2008, Daniel earned more than $600,000 from the partnership.

Although Daniel testified at trial that his business reputation had been tarnished and he was unable to obtain any clients, he testified at his deposition that he was confident he would have a number of clients as soon as a covenant not to compete with Atlas Service Link expired. Further, in the Fall of 2010, Daniel began performing work as a consultant through Intel McAfee. Daniel grossed approximately $145,000 in 2010 and had grossed between $60,000 and $80,000 during the first half of 2011. Daniel agreed that he also formed a new business entity in April 2010 and performed some consulting work through that entity. Although he failed to provide information on that entity through discovery, he claimed all money he had been paid was deposited into his checking account and that he produced that information in discovery.

By 2009, Cynthia was engaged in flipping houses. However, she was prevented from pursuing this career in 2010 due to Daniel's ceasing to provide support and cancelling her credit cards. Cynthia testified she never made more than $80,000 per year flipping houses. According to Cynthia, she "stunted the growth" of her company and her career to assist Daniel in building his company. Daniel then lost his company due to "his bad behavior," and Daniel's "bad financial decisions" were affecting Cynthia. Cynthia believed Daniel had greater earning potential than she did and that she did not have the same ability as Daniel to pay her debt. Cynthia asked to be made as "liquid" as possible so that she could resume flipping houses and have assets with which to pay her living expenses.

Second, the trial court could consider fault in the breakup of the marriage in dividing the community estate. *Young*, 609 S.W.2d at 762. Cynthia testified that, even though she moved out of the marital home, she hoped the parties would reconcile. She sought counseling to assist her and invited Daniel to attend. Daniel did not meaningfully participate in counseling, and the

counselor ultimately told Cynthia the marriage was a "lost cause." In June 2009, Cynthia began to suspect Daniel was committing adultery. In September 2009, Cynthia saw a woman's underwear in the master bedroom of the marital home, and a private investigator filmed Daniel and Alvarez kissing and hugging at an airport. Daniel, however, represented to the trial court that his relationship with Alvarez did not begin until later, a statement the trial court could have found not to be credible.

Third, a court may consider one spouse's wrongful dissipation of community assets when dividing a marital estate. *See Schlueter*, 975 S.W.2d at 588–89. Throughout 2010, Daniel expended community assets on trips to see Alvarez in Milwaukee, on trips with Alvarez to the Bahamas and to Europe, and on gifts to Alvarez. Daniel testified that Alvarez reimbursed him for the gifts and that many of the trips to Milwaukee and to Europe were related to seeking work and were often reimbursed. Cynthia, however, testified that she would receive none of the benefit for expenditures that Daniel made to look for work and to build relationships for future work. Daniel also sold a number of community assets after the trial started, some to friends and family. It was unclear whether the assets were sold for fair market value, and Daniel did not fully account for the proceeds from the sales.

Fourth, the trial court could consider misconduct during the divorce proceedings. There was evidence Daniel sold community assets in violation of the trial court's standing order. Further, Cynthia attempted to depose Daniel during the divorce proceedings. Daniel canceled the first deposition on the day it was scheduled, claiming he was too ill to attend. However, Alvarez flew to Dallas later that day and spent the weekend with Daniel at various places in Dallas and Fort Worth. Daniel's second deposition was scheduled on a Monday. He canceled the deposition on the previous Friday, again claiming he was too ill to attend. Daniel, however,

flew to Milwaukee that weekend and did not return to Dallas until after the time his deposition was scheduled to begin. Cynthia testified she incurred attorney's fees due to Daniel's actions.

Finally, a court may consider payments made to attorneys from the community estate. *Roever v. Roever*, 824 S.W.2d 674, 676 (Tex. App.—Dallas 1992, no writ). Both parties had paid attorney's fees from community assets. However, Cynthia received permission from the trial court to liquidate community assets to pay the fees, while Daniel did not. There was also evidence that Daniel spent community funds on attorney's fees to pursue a claim against his former partnership. Finally, Cynthia testified that she incurred fees due to Daniel's conduct during the divorce proceedings, including Daniel's failure to appear at scheduled depositions and failure to completely respond to Cynthia's discovery requests.

On this record, we cannot conclude the trial court abused its discretion by making a disproportionate award of the marital property to Cynthia.

### *Casteel-Type Error*

Daniel next argues the trial court committed *Casteel*-type error by weighing factors in the property division for which there was no supporting evidence or pleadings. Daniel specifically asserts that Cynthia did not plead that a disproportionate division of the property was justified based on fraud on the community, health of the spouses, and the ages of the spouses.

The supreme court has held that reversible error is presumed when a broad-form question submitted to the jury incorporates multiple theories of liability and one or more of those theories is invalid, *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000), or when the broad-form question commingles damage elements that are unsupported by legally sufficient evidence, *Harris Cnty. v. Smith*, 96 S.W.3d 230, 233–34 (Tex. 2002). *See also Thota v. Young*, 366 S.W.3d 678, 680 (Tex. 2012). Without deciding whether *Casteel* or *Harris County* is applicable to a trial court's application of relevant factors in determining the division of a marital estate, we

note the San Antonio Court of Appeals has concluded that in order to preserve *Casteel*-type error in a bench trial, the party must request additional or amended findings of fact that specifically draw the trial court's attention to the complaint that one of the elements of damages included in the trial court's broad-form finding was unsupported by the evidence. *Tagel v. Galvan*, 155 S.W.3d 510, 516 (Tex. App.—San Antonio 2004, no pet.); *see also Miranda v. Byles*, 390 S.W.3d 543, 552 (Tex. App.—Houston [1st Dist.] 2012, pet. filed) (op. on reh'g) (to preserve error in bench trial, party must request additional findings of fact and conclusions of law asking for detailed apportionment of findings between permissible and impermissible bases for liability). We have concluded that Daniel failed to timely request additional findings of fact from the trial court. Accordingly, Daniel has failed to preserve this complaint for our review. *See Tagel*, 155 S.W.3d at 516.

*Failure to Divide and Award Unliquidated Assets*

Daniel next complains the trial court failed to divide the community's interest in GP Holdings that exceeded the money in the capital account. However, the trial court awarded Cynthia:

> One Hundred percent (100%) of the community interest in and to GP Holdings Partnership, a Texas general partnership, including, but not limited to any community interest in and to Atlas Service Link, LLC, or the transmutations, if any, of said partnership or said LLC, including but not limited to, any capital account held by said partnership or said LLC in the name of or for the benefit of Daniel P. Silvey, valuing said capital account as it existed as the time of the failed mediation on October 18, 2010.

We conclude the trial court awarded Cynthia all the community interest in the partnership.

*Punitive Division*

Daniel argues the property division is punitive and unjust and that punishing him for refusing to settle his claim against the partnership is an impermissible basis for the property division. In support of his argument, Daniel relies only on the trial court's valuing the capital

account as of the time of the mediation. As discussed above, the trial court did not abuse its discretion by relying on evidence from the time of the mediation to value the capital account. Further, we see nothing in the record that indicates the trial court's property division was based solely on Daniel's refusal to settle his claim against the partnership. We conclude Daniel failed to establish the trial court's division of the property was punitive. *See Halleman v. Halleman*, 379 S.W.3d 443, 453 (Tex. App.—Fort Worth 2012, no pet.) (overruling appellant's complaint trial court used property division to punish her because reasonable basis supported disproportionate property division).

## *Cumulative Error*

Daniel finally argues the trial court's cumulative errors in making the property division require reversal. Based on this record, we have concluded the trial court did not err in dividing the marital property. Accordingly, there is no cumulative error that would require reversal of the property division.

## *Conclusion*

The trial court had "the opportunity to observe the parties on the witness stand, determine their credibility, evaluate their needs and potentials, both social and economic." *Murff*, 615 S.W.2d at 700. We conclude the record contains evidence of a substantive and probative character to support the trial court's division of the community property. Further, based on the record before us, we cannot say that the trial court either clearly abused its discretion or made an inequitable division of marital assets.[6] Therefore, we will not disturb the trial court's judgment regarding the property division. We resolve Daniel's first issue against him.

---

[6] Because we review each case on its merits, the division of marital estates in other cases does not control our disposition of Daniel's issues. However, we note that similar divisions of marital estates have been upheld on appeal in similar circumstances. *See Rafidi v. Rafidi*, 718 S.W.2d 43, 45–46 (Tex. App.—Dallas 1986, no writ) (85–90% of marital estate to wife); *Morrison v. Morrison*, 713 S.W.2d 377, 379 (Tex. App.—Dallas 1986, writ dism'd) (83.5%); *Ohendalski*, 203 S.W.3d at 914–15 (81%); *Faram v. Gervitz-Faram*, 895 S.W.2d 839, 844 (Tex. App.—Fort Worth 1995, no pet.) (72.9%); *Golias v. Golias*, 861 S.W.2d 401, 403 (Tex. App.—Beaumont 1993, no writ) (79%); *Oliver v. Oliver*, 741 S.W.2d

We affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

111338F.P05

---

225, 228–29 (Tex. App.—Fort Worth 1987, no writ) (80%); *Huls v. Huls*, 616 S.W.2d 312, 317–18 (Tex. Civ. App.—Houston [1st Dist.] 1981, no writ) (85%).



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

IN THE MATTER OF THE MARRIAGE
OF C.A.S. AND D.P.S.

No. 05-11-01338-CV

On Appeal from the 199th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 199-53871-2009.
Opinion delivered by Justice Fillmore,
Justices Lang-Miers participating.


In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Cynthia A. Silvey recover her costs of this appeal from appellant Daniel P. Silvey.


Judgment entered this 26th day of June, 2013.


/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE