**Affirmed and Memorandum Opinion filed May 19, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00655-CV

---

### KEVIN MATTHEW HALL, Appellant

### V.

### REBECCA MACCORKLE HALL, Appellee

---

**On Appeal from the 308th District Court
Harris County, Texas
Trial Court Cause No. 2010-63670**

---

## MEMORANDUM OPINION

In this appeal from a final decree of divorce, the husband challenges the trial court's judgment in eight issues. In his first four issues, he asserts that the trial court erred in granting summary judgment. In issues five and six, he argues that the trial court was not presented with any motion for judgment or that any such motion was premature. In his seventh issue, he urges that the trial court's failure to file findings of fact and conclusions of law is presumptively harmful. Finally, he

challenges the award of amicus attorney's fees in his eighth issue. For the reasons explained below, we affirm the judgment of the trial court.

## I. BACKGROUND[1]

Kevin Matthew Hall and Rebecca MacCorkle Hall married in December 2005 and separated in August 2010. They had one child, G.D.H., during their marriage. Rebecca filed her original petition for divorce in September. Their case proceeded to trial before an associate judge on the issue of possession of and access to the child in December 2011; both Rebecca and Kevin were represented by counsel. After two days of testimony, the associate judge called the parties' attorneys into chambers and provided a recommendation to them.[2] The associate judge strongly suggested that the parties reach an agreement instead of continuing with trial and recommended certain terms.

The parties then discussed specific terms of the agreement through the amicus attorney, changing at least one of the terms.[3] A hand-written document scribed by the amicus attorney and entitled "Judge's Ruling" was produced the

---

[1] This background section is derived in part from the testimony of the sole witness at the motion for new trial hearing: Kevin's trial counsel. Kevin's brief contains no record references in his statement of facts or otherwise. *See* Tex. R. App. P. 38.1(g), (i) (providing that an appellant's statement of facts "be supported by record references" and the argument "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Further, no record was taken at the "prove-up" hearing discussed below, although a reporter was present for the hearing and, according to Kevin's counsel, the parties provided sworn testimony.

[2] We make no comment on the propriety of the associate judge's alleged actions in this case.

[3] Kevin contests on appeal that the parties reached an agreement. However, he mentions that he filed a motion to withdraw consent, which certainly implies that he at one time consented to the agreement. Regardless, our record does not contain any such motion. Moreover, Kevin has not taken issue on appeal with the trial court's ruling, failure to rule, or failure to set this motion for a hearing, if any such events occurred below. *See* Tex. R. App. P. 33.1(a). Finally, as discussed in more detail *infra*, his trial counsel testified at the hearing on the motion for new trial that Kevin, under oath, acknowledged that he agreed with the terms reflected in this document.

2

next day and signed by the associate judge after a "prove-up" hearing. A court reporter was present for this hearing but no record was taken; Kevin's counsel neither requested nor objected to the failure of the taking of a record. Both Kevin and Rebecca were placed under oath and testified that they were in agreement with the Judge's Ruling. The parties neither objected to any of the terms of this ruling nor sought to provide any contrary evidence. The Judge's Ruling only concerned possession of and access to the parties' child, child support, and amicus attorney's fees. It provided in pertinent part as follows:

- Both parents were appointed joint managing conservators.

- Rebecca was given the right to designate G.D.H.'s residence within certain school districts, the exclusive right to make and consent to medical, dental, and surgical treatments involving invasive procedures, and the exclusive right to consent to psychiatric and psychological treatment.

- Educational decisions were subject to agreement by the parties; all other rights were independently held by both parents.

- Kevin's visitation was to be under a modified standard possession order, detailed in the ruling.

- Rebecca was to maintain health insurance and uninsured costs were to be split between the parties.

- Kevin was ordered to pay $1,200 per month as child support through the Texas Disbursement Unit.

- Rebecca was to hold G.D.H.'s passport, with "standard language from the Texas Family Law Manual" on the passport and travel to be included in the final decree.

- Rebecca was to enroll G.D.H. in a specified pre-school program.

- Both parents were to enroll in "Our Family Wizard" on or before January 1, 2012 and to pay their own costs. They were to remain in the program until further order of the court.

- Amicus fees of $18,357.75, "per court's prior ruling $11,925.00 to be paid from 401(K) of the community property; Kevin to withdraw $1,200.00 from 529 plan to be paid to Amicus Attorney on or before January 15, 2012 by 5:00 pm." The remaining balance of $2,284.37 owed by Rebecca was to be paid through a wage withholding order of $100.00 per month, and Kevin's remaining balance of $2,949.37 was to be paid through a promissory note with a lien on Kevin's separate property if he failed to pay. Both parties were to pay six percent interest on all remaining balance due to the amicus attorney.

Kevin filed a motion for new trial a month later on January 17, 2012. In this motion, Kevin asserted that, *inter alia*, a new trial should be granted "because this Court stopped the trial and rendered a judgment before Respondent opened his case in chief and presented any evidence." Kevin further objected to the "denial of his constitutional, statutory, and common law right to trial . . . ." He objected to several specific terms of the Judge's Ruling, including the change in G.B.H.'s school and the implementation of the modified standard possession order. Kevin also filed a request for findings of fact and conclusions of law that same day.[4] On February 28, Kevin filed a motion to restart the trial, in which he stated he was "not in agreement with Judge Ramos' rulings on the parties' minor child." He further complained that the trial court informed the parties it would provide a

---

[4] Kevin filed a notice of past-due findings and conclusions on April 26, 2012.

4

property ruling at a later date, yet two months had passed and no such ruling had been entered.

A formal decree of divorce was signed by the trial court on March 27, 2012, and provided as follows regarding the custody and property division renditions:

> This divorce [was] judicially PRONOUNCED AND RENDERED AS TO CHILD ISSUES AND FOR AGREED COURT DETERMINATION OF PROPERTY ISSUES in court at Houston, Harris County, Texas, on December 15, 2011, and further noted on the court's docket sheet on the same date, RENDERED IN PART AS TO PROPERTY ISSUES AND CLAIMS ON MARCH 2, 2012, but signed on March 27, 2012.

Kevin's previously filed motion for new trial was heard by the trial court on June 11 and orally denied; no written order denying the motion appears in our record. Appellant timely noticed his appeal.[5]

## II.  SUMMARY JUDGMENT

In his first four issues, Kevin asserts in various manners that the trial court erred in granting summary judgment in this case, including that the trial court (1) wrongfully granted summary judgment during Rebecca's case in chief; (2) was not presented with a summary judgment motion; and (3) was not presented with a written motion with specific grounds for disposition. He further urges that there was no advance notice of a summary judgment.

However, our review of the record indicates that the trial court did not grant summary judgment; instead, the trial court signed a final decree of divorce that provides:

> The Court finds that after a discussion during the Trial, the parties have negotiated and entered into a written agreement as contained in this decree by virtue of having approved this decree as to both form

---

[5] A bankruptcy stay was issued on this appeal but has since been lifted.

and substance. To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract. The Court approves the agreement of the parties as contained in this Final Decree of Divorce.[6]

Further, according to Kevin's attorney, who testified under oath at the hearing on Kevin's motion for new trial, the trial court conducted an evidentiary hearing after the Judge's Ruling described above was transcribed. Both Kevin and Rebecca testified under oath at this hearing. A court reporter was available, but no record was requested or taken. Kevin and Rebecca acknowledged that the Judge's Ruling reflected their agreement. Neither party sought to introduce evidence contrary to the Judge's Ruling, nor did either object to the procedures followed.[7]

---

[6] Although it does not appear that Kevin signed the divorce decree, he has not complained of this error, if any, on appeal.

[7] At the motion for new trial hearing, the following testimony was elicited by Rebecca's attorney from Kevin's trial counsel:

> Q.     [I]t's your general understanding that as I was on my way out following the completion of that document, my client and I were telephoned and called to come back for a prove-up, correct?
>
> A.     Yes.
>
> Q.     And our clients were present with a court reporter and Judge Ramos and each of us, correct?
>
> A.     Correct.
>
> Q.     And our clients stood in front of a court reporter and Judge Ramos under oath in this courtroom and went through the standard prove up questions.
>
> A.     Correct.
>
> ***
>
> Q.     Did anyone object to the prove-up?
>
> A.     No.
>
> Q.     Did anyone make any request to file objections on the record?
>
> A.     No, they did not.
>
> Q.     Did anyone demand the opportunity to present a bill of exceptions prior to the prove-up?
>
> A.     No.

In short, Kevin has not referred us to any record location where any summary judgment procedures were requested or utilized.[8] Further, any complaint by Kevin that the trial court erroneously employed summary judgment proceedings in this case does not fall within the narrow scope of the fundamental-error doctrine recognized by the Supreme Court of Texas. *See In re B.L.D.*, 113 S.W.3d 340, 350–52 (Tex. 2003). Thus, Kevin was required to preserve error in the trial court to be heard on any such complaint on appeal. In his motion for new trial, Kevin does not mention the words "summary judgment" anywhere; instead, he asserts the trial court "stopped the trial and rendered a judgment before [he] opened his case in chief and presented any evidence." On the record before this court, we conclude that Kevin failed to preserve error as to any such "summary judgment" complaints by presenting these complaints in the trial court and obtaining an adverse ruling. *See* Tex. R. App. P. 33.1(a); *see also Gammill v. Fettner*, 297 S.W.3d 792, 803 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Under these circumstances, we overrule Kevin's first four issues.

## III.  MOTION FOR JUDGMENT

In issues five and six, Kevin asserts that the trial court was not presented with a motion for judgment and that any such motion would have been premature.

---

\*\*\*

Q.      Did Kevin Hall and Rebecca Hall indicate to this Court that they were in agreement with the document that set forth the terms?

A.      Yes.

Q.      And did they do that freely?

A.      Yes.

[8] In fact, as noted above, there is not a single record reference in the entirety of Kevin's brief. *See* Tex. R. App. P. 38.1(g), (i).

7

But as with his first four issues, Kevin has failed to preserve error on these complaints.

Thus, for the same reasons stated above, we overrule his fifth and sixth issues.

## IV.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

Kevin asserts in his seventh issue that the trial court's ruling is presumed harmful because it failed to file findings of fact and conclusions of law. Our review of the record indicates that Kevin requested findings and conclusions on January 17, 2012, and filed a notice of past due findings and conclusions on April 26. The trial court is required to make written findings and conclusions in a suit for dissolution of marriage concerning (1) the characterization of each party's assets, liabilities, claims, and offsets *on which disputed evidence has been presented*; and (2) the value or amount of the community estate's assets, liabilities, claims, and offsets *on which disputed evidence has been presented*. Tex. Fam. Code Ann. § 6.711(a).

Here, Kevin has not directed us to any place in the record where "disputed evidence" on the parties' marital estate has been presented. In fact, our review of the record reveals that only Kevin's appraisal and inventory and a "financial information sheet" signed only by Kevin are included. Thus, there is nothing in our record to indicate that the parties' disputed the characterization or value of the community estate. As such, no findings and conclusions were required. *See id.*; *cf. In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 380–81 (Tex. App.—Dallas 2013, no pet.) (concluding that the trial court was not required to make findings and conclusions on undisputed community liability).

For the foregoing reasons, we overrule Kevin's seventh issue.

8

## V. AMICUS ATTORNEY'S FEES

In Kevin's eighth and final issue, he urges that the trial court erred by awarding fees to the amicus attorney without any billing records, testimony, or evidentiary support. Again, as with Kevin's first six issues, there is nothing in our record to indicate that Kevin timely made this complaint to the trial court. *See* Tex. R. App. P. 33.1(a). Additionally, at the hearing on Kevin's motion for new trial, the following colloquy occurred between Kevin's attorney and the amicus's representative regarding these fees:

> Q. Were you given copies of Ms. Canales' invoices for your client on a monthly basis?
>
> A. Yes, I was.
>
> ***
>
> Q. Were those invoices – were there charges on th[ose] bills for Ms. Canales' associate attorneys?
>
> A. Yes, there were.
>
> Q. Did you ever object to those charges?
>
> A. Yes, I did.
>
> Q. Did you do that with the Court?
>
> A. No. I did it with Ms. Canales.
>
> Q. And what was the outcome of that discussion?
>
> A. We didn't – we decided to let it go with the Court. I don't remember why or what happened.

Thus, Kevin's trial attorney acknowledged, under oath, that no complaint regarding the amicus fees had been made before the trial court until at least the time of this hearing, which was conducted over two months after the divorce decree memorializing the amicus attorney's fees was signed. In fact, his counsel admitted that she made no objections to *any* of the matters contained in the Judge's Ruling,

9

one of which was the amicus attorney's fees, nor did she attempt to present any evidence at the "prove-up" hearing.

Under these circumstances, we conclude that Kevin failed to preserve this complaint for our review. Accordingly, it is overruled.

## VI.   CONCLUSION

Having overruled each of Kevin's appellate issues, we affirm the judgment of the trial court.


/s/    Sharon McCally
Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.