**Affirm and Opinion Filed January 23, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00838-CV

**KHOSROW SADEGHIAN, Appellant**
**V.**
**DAVID JACO, Appellee**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-13719**

# MEMORANDUM OPINION

Before Justices Bridges, Molberg, and Partida-Kipness
Opinion by Justice Molberg

Appellant Khosrow Sadeghian (Sadeghian) appeals a judgment rendered against him on a

Deceptive Trade Practices-Consumer Protection Act (DTPA)[1] claim relating to a real estate

transaction he entered into with appellee David Jaco (Jaco) in 2011. As discussed below, we

overrule Sadeghian's four issues and affirm the trial court's judgment in Jaco's favor.

## BACKGROUND

The DTPA is a "simple, nontechnical cause of action," *Amstadt v. U.S. Brass Corp.*, 919

S.W.2d 644, 649 (Tex. 1996), designed by the Legislature to "protect consumers against false,

misleading, and deceptive business practices, unconscionable actions, and breaches of warranty

and to provide efficient and economical procedures to secure such protection." TEX. BUS. & COM.

---

[1] *See* TEX. BUS. & COM. CODE § 17.41–.63.

CODE § 17.44(a); *see Amstadt*, 919 S.W.2d at 649 (DTPA aims to "deter the conduct [it] forbids" and "to encourage consumers to litigate claims that would not otherwise be economically feasible"). We are to liberally construe and apply the DTPA to achieve its purposes. TEX. BUS. & COM. CODE § 17.44(a).

Generally, a "consumer" includes "an individual … who seeks or acquires by purchase or lease, any goods or services," which include "tangible chattels or real property purchased or leased for use." *Id*. § 17.45(1), (4). A consumer may maintain a DTPA action, in part, where "any unconscionable action or course of action by any person" constitutes "a producing cause of economic damages or damages for mental anguish." *Id*. § 17.50(a)(3). "Unconscionable action or course of action" is "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience or capacity of the consumer to a grossly unfair degree." *Id*. § 17.45(5).

Jaco's DTPA claim concerns real property Sadeghian began leasing him in late 2005 and sold to him in 2011. In 2015, Jaco sued Sadeghian and others, asserting various claims regarding the sale. In his suit, Jaco alleged a DTPA violation occurred by selling the property to him at an unconscionable price. In the sale in 2011, Jaco paid a $10,000 downpayment, and the parties executed a real estate lien note, deed of trust, and special warranty deed with vendor's lien. The note reflected a principal amount due of $159,800, with an annual interest rate of 8.2 percent, a maturity date of May 1, 2016, and an annual interest rate of 18 percent on matured but unpaid amounts. In the same year of the sale, the tax appraisal done by the Dallas Central Appraisal District (DCAD) estimated the property value at $30,000. Jaco's payments on the note were roughly $1,195 per month. When Jaco signed the documents, Sadeghian told him he would go to the title office in three months to convey the title, but he never delivered the deed to Jaco. Instead, in 2014, Sadeghian deeded the property to Kamy Real Property Trust, another defendant for whom

Sadeghian served as trustee. Jaco's deed was not recorded until late 2014, the day after Sadeghian received a DTPA letter from Jaco's counsel.

In his last live pleading, Jaco sought damages, exemplary damages, attorneys' fees, and costs, as well as "all other amounts to which he may prove himself entitled" and an order "declar[ing] the lien against his home void and ordering that [Sadeghian and others] convey good, insurable and unencumbered title to the property to Jaco."

During the trial, the jury heard testimony about Sadeghian's acquisition of the property in question, Jaco's history as an immigrant from El Salvador, his struggle with proficiency in English, the poor condition of the property at the time of the lease, Jaco's significant efforts and expenditures in making it habitable, Sadeghian's misrepresentations to Jaco about the sale and the property that was conveyed, Sadeghian's threats to Jaco regarding the property and demands for additional payments, and Jaco's history of payments to Sadeghian—a history reflecting that, up until the time of trial, Jaco had paid Sadeghian roughly $105,000 on the note. At trial, Sadeghian claimed he still owned the property and that Jaco still owed between $148,900 and $151,500 on the note. The jury also heard the following testimony by Sadeghian during cross-examination:

> Q. So anyway, you made – I mean, you made a great deal on this house. You buy it for $20,000, you get a total of, my calculation is somewhere around $65,000 on rent and -- over six and a half years. And then you sell it to Mr. Jaco for $170,000. That's a pretty good deal, isn't it?
>
> A. That's the American way. I would say that's what I like about the – the open market system. I don't have to sell you if you don't want – you don't buy it, if it's not in your price range.

At the close of the evidence, Sadeghian moved for a partial instructed verdict, one part of which addressed Jaco's DTPA claim. In the motion, Sadeghian argued the record contained no competent evidence as to the actual value of the property and thus no proof of an unconscionable difference between the sales price and actual value of the property. The trial court denied Sadeghian's motion.

Neither party objected to the court's charge to the jury. Following deliberations, the jury returned a verdict in Jaco's favor on his DTPA claim,[2] finding Sadeghian engaged in an unconscionable action or course of action that was a producing cause of damages to Jaco and awarding him $60,600 for economic injury and nothing for mental anguish or lost appreciation.

The jury also found Sadeghian engaged in such conduct knowingly or intentionally, awarded Jaco an additional $500,000 in damages for Sadeghian's knowing or intentional conduct, and awarded trial-level and conditional appellate attorneys' fees to Jaco.

Following the jury's verdict, Jaco moved for entry of judgment, and the trial court conducted a hearing. At the hearing, Sadeghian did not object to the portions of the proposed judgment awarding economic damages or attorneys' fees. However, his counsel did object to the proposed language in the judgment declaring void the promissory note, deed of trust, and vendor's lien in the special warranty deed. After hearing the parties' arguments, the court entered judgment in Jaco's favor, awarding him trebled damages of $181,800,[3] attorneys' fees as reflected in the jury's verdict, prejudgment interest, and declaring void the promissory note, deed of trust, and vendor's lien in the special warranty deed, while noting in all other respects the special warranty deed remained valid.

Following entry of the judgment, Sadeghian filed a motion for new trial, challenging only the jury's exemplary damages award of $500,000. Sadeghian did not include in that motion any of the arguments he raises in this appeal. The trial court denied the motion, and Sadeghian timely appealed. He raises four issues here, each of which we address below.

---

[2] The jury did not find in Jaco's favor on his fraud and civil conspiracy claims. Jaco has not appealed these findings.

[3] *See* TEX. BUS. & COM. CODE § 17.50(b)(1) (allowing trebling of certain amounts depending on findings of trier of fact).

–4–

## ANALYSIS

### *Declaratory Relief*

In his first two issues, Sadeghian argues the trial court erred as a matter of law by entering a judgment under the DTPA declaring void the promissory note, vendor's lien, and deed of trust executed in connection with the parties' 2011 real estate transaction. He contends that the jury findings do not support the declaratory relief, that the declaratory relief is not available under the DTPA, and that the declaratory relief violates the election of remedies doctrine.

We review matters of statutory construction *de novo*, "ascertaining and giving effect to the Legislature's intent as expressed by the plain and common meaning of the statute's words." *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007). We give effect to every word, clause, and sentence and apply the plain meaning of the statutory text, unless a different legislative definition is supplied, a different meaning is apparent from the context, or the plain meaning leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *In re Echols*, 569 S.W.3d 776, 779 (Tex. App.—Dallas 2018, orig. proceeding [mand. denied]).

To prevail on a DTPA claim, a consumer must establish the defendant violated a specific provision of the Act and that this violation was a producing cause of the consumer's injury. *Amstadt*, 919 S.W.2d at 649 (citing TEX. BUS. & COM. CODE § 17.50(a)); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995)). The jury concluded both in Jaco's favor here.

For consumers who prevail under the DTPA, the statute allows various types of relief, including:

> (1) the amount of economic damages found by the trier of fact [as well as damages for mental anguish and the trebling of certain amounts depending on the findings of the trier of fact];

> (2) an order enjoining such acts or failure to act;

(3) orders necessary to restore to any party to the suit any money or property, real or personal, which may have been acquired in violation of this subchapter; and

(4) any other relief which the court deems proper, including the appointment of a receiver or the revocation of a license or certificate authorizing a person to engage in business in this state if the judgment has not been satisfied within three months of the date of the final judgment.

TEX. BUS. & COM. CODE § 17.50(b). The DTPA also states, "[e]ach consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees." *Id.* § 17.50(d).

Under the DTPA, consumers have "several remedies from which to choose and … the court is to grant the consumer that relief which the consumer proves a right to receive." *Woods v. Littleton*, 554 S.W.2d 662, 669 (Tex. 1977). As reflected above, the statute allows each consumer who prevails on a DTPA claim various remedies, including "any other relief which the court deems proper." TEX. BUS. & COM. CODE § 17.50(b)(4). The trial court based its declaratory relief on that language.

Judgments must "conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity." TEX. R. CIV. P. 301. During the hearing on Jaco's motion to enter judgment, after Sadeghian's lawyer argued it would be improper for the court to award the declaratory relief being requested, the court and the parties' counsel had the following exchange:

THE COURT: Okay. So I don't – the question is, is there a legal basis for, as a part of this case, the Court to declare that those instruments are void? And I mean, do you have some legal basis for opposing that request for relief?

SADEGHIAN'S COUNSEL: I cannot cite you a case or a statute, your Honor, that – that would oppose your ability to grant declaratory judgment.

THE COURT: I mean, and I don't want to be unfair. [To Jaco's counsel:] the real question probably ought to go to you in the first instance. What is the legal basis for the Court to issue a declaratory judgment stating -- declaring that the lien and the deed of trust are void?

JACO'S COUNSEL: It's based upon the jury's finding of the unconscionable act.

During additional discussion, the court confirmed Jaco had continued to make payments up until the time of trial and that the lien and the deed of trust were still encumbering the subject property at the time of the hearing. The trial judge shared her understanding that she was being asked to declare the encumbrances void as an equitable remedy incident to the DTPA claim because the underlying transaction was tainted with the unconscionable conduct found by the jury. The trial judge asked Sadeghian's counsel how the jury's verdict could be respected if the encumbrances were allowed to stand, considering the jury's finding of knowing or intentional unconscionable conduct, and in response, he simply stated, "I understand the quandary, your Honor." Sadeghian's counsel told the trial judge he was not aware of any authority to allow or not to allow her to provide the requested relief under the DTPA. The trial court granted the requested relief and included the proposed declaratory language in the judgment.

We do not believe this was error based on the record here. The jury found that Sadeghian engaged in unconscionable conduct, and the DTPA specifically authorizes a number of different remedies he could receive based on that finding, including the amounts awarded by the jury here and "any other relief the court deemed proper." TEX. BUS. & COM. CODE § 17.50(b). We reject Sadeghian's arguments that the DTPA required the jury to issue a finding specifically with regard to the 2011 sale and that the DTPA only allowed Jaco to receive economic damages or mental anguish damages because both arguments ignore the DTPA's plain language. *Id*. We also reject Sadeghian's argument that the declaratory relief awarded by the trial court somehow runs afoul of the election of remedies doctrine, both because that argument ignores the DTPA's plain language, *id.*, and because Sadeghian failed to preserve that issue for our review. *See* TEX. R. APP. P. 33.1(a).

Based on this record and the jury's findings, we conclude that the declaratory relief included in the judgment was appropriate here based on the plain language of the statute, including

its purposes, the breadth with which we are to construe it, and the remedies it authorizes. *See* TEX. BUS. & COM. CODE §§ 17.44(a), .50(b). We overrule Sadeghian's first two issues.

*Sufficiency of the Evidence and Preservation of Error*

In his third issue, Sadeghian asserts the evidence is insufficient to support the jury's finding of unconscionable conduct, arguing primarily about the factual sufficiency of the evidence but also discussing legal sufficiency as well. Thus, we address both.

A. *Legal Sufficiency*

In a legal sufficiency review, we determine whether more than a scintilla of evidence supports the jury's finding by considering evidence favorable to the finding being challenged if a reasonable fact-finder could and disregarding evidence contrary to the finding unless a reasonable fact-finder could not. *Horizon Health Corp. v. Acadia Healthcare Co*., 520 S.W.3d 848, 859 (Tex. 2017). We are limited to reviewing only the evidence tending to support the jury's verdict and must disregard all evidence to the contrary, except contrary conclusive evidence. *Id*. We consider the evidence in the light most favorable to the finding and indulge every reasonable inference supporting it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Evidence is legally insufficient if: "(1) there is a complete absence of evidence of a vital fact; (2) the rules of law or of evidence bar a court from giving weight to the only evidence presented to prove a vital fact; (3) there is no more than a mere scintilla of evidence presented to prove a vital fact; or (4) the evidence offered conclusively establishes the opposite of a vital fact." *Horizon Health Corp.*, 520 S.W.3d at 859.

A legal sufficiency argument can be preserved by: (i) a motion for instructed verdict, (ii) a motion for judgment notwithstanding the verdict, (iii) an objection to a jury question's submission, (iv) a motion to disregard a jury's answer to a vital fact issue, or (v) a new trial motion. *In re M.M.*, No. 05-19-00329-CV, 2019 WL 4302255, at *6 (Tex. App.—Dallas Sept. 11, 2019,

–8–

no pet. h.) (mem. op.) (citing *In re A.H.J.*, No. 05-15-00501-CV, 2015 WL 5866256, at \*10 (Tex. App.—Dallas Oct. 8, 2015, pet. denied) (mem. op.); *see* Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L. REV. 361, 362 (1960). While his briefing here could be clearer, to the extent that Sadeghian raises issues of legal insufficiency in this appeal, his counsel preserved error on that issue by raising it in his motion for partial instructed verdict.

Sadeghian argues that the 2005 Sheriff's Deed[4] and the 2011 DCAD property tax appraisal are not legally competent evidence of the property's fair market value and that there is no support for the jury's finding of unconscionable conduct when there was no evidence of property value to compare with the sales price Jaco paid. Sadeghian did not object to the admission of either the 2005 Sheriff's Deed or the 2011 DCAD property tax appraisal at trial.

In an apparent attempt to avoid that problem, Sadeghian quotes *Dallas Cty. Bail Bond v. Black*, 833 S.W.2d 247, 249 (Tex. App.—Dallas 1992, no writ), stating, "The value placed upon real property for tax assessment purposes, without participation of the landowner, is not evidence of its value for purposes other than taxation. The evidence is considered hearsay and cannot support a finding of fact even without objection at trial." In *Black*, we cited *Houston Lighting & Power Co. v. Fisher*, 559 S.W.2d 682, 686 (Tex. Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.) and *Kuehn v. Kuehn*, 594 S.W.2d 158, 161 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ) for those propositions.

However, as we later noted in *In re Marriage of C.A.S. and D.P.S.*, 405 S.W.3d 373, 390 (Tex. App.—Dallas 2013, no pet.), *Kuehn* (and as we note here, *Fisher* as well) was decided before the adoption of the Texas Rules of Evidence, including Rule 802, which provides that hearsay

---

[4] The 2005 Sheriff's Deed reflected a purchase price of roughly $20,000 at a sheriff's sale soon before Sadeghian began leasing the property to Jaco.

evidence that is not objected to "shall not be denied probative value merely because it is hearsay."[5] Thus, when a tax appraisal is admitted without objection, it can constitute some probative evidence on which the fact finder could rely to determine the fair market value of real property. *See In re Marriage of C.A.S. and D.P.S.*, 405 S.W.3d at 390; *Freeze v. Ramirez*, No. 04-18-00213-CV, 2019 WL 2014988, at *4 (Tex. App.—San Antonio May 8, 2019, no pet.) (mem. op.); *Silberstein v. Lewis*, No. 01-17-00294-CV, 2018 WL 6684844, at *6 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet.) (mem. op.);[6] *Warriner v. Warriner*, 394 S.W.3d 240, 253 n.12 (Tex. App.—El Paso 2012, no pet.). The 2011 DCAD tax appraisal thus constituted some probative evidence on which the jury could rely, and we see no reason not to extend the same logic to the 2005 Sheriff's Deed.

We overrule Sadeghian's argument regarding legal sufficiency.

### B.    Factual Sufficiency

Sadeghian also argues the evidence was factually insufficient to support the jury's finding that he engaged in unconscionable conduct. In deciding whether evidence is factually sufficient to support a jury finding, we consider all the evidence in a neutral light and will set aside the verdict only if the evidence supporting the jury finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 842 (Tex. App.—Dallas 2011, no pet.). In doing so, the court "is not a fact finder, and we will not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could

---

[5] *See Wilson*, 168 S.W.3d at 812 n.29 (Tex. 2005) (noting the general rule that "incompetent evidence is legally insufficient to support a judgment, even if admitted without objection" but stating "[t]his rule was changed for hearsay evidence in 1983. *See* TEX. R. EVID. 802 ('Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay.').")

[6] In his briefing, Sadeghian quotes *Silberstein* to argue that the roughly $20,000 foreclosure price paid for the property before the lease to Jaco "does not reflect fair market value of property because property is typically sold for far less than its fair market value at a foreclosure sale." *Silberstein*, 2018 WL 6684844, at *6. While property may typically be sold for less than fair market value at a foreclosure sale, in *Silberstein*, the court held that the foreclosure price of the property constituted "more than a scintilla of the value of the property." *Id.*

be reached upon review of the evidence." *Shamoun v. Shough*, 377 S.W.3d 63, 68 (Tex. App.—Dallas 2012, pet. denied) (citing *Tex. Farmers Ins. Co. v. Cameron*, 24 S.W.3d 386, 392 (Tex. App.—Dallas 2000, pet. denied)). We are to set aside a finding only if the evidence is so weak or so against the overwhelming weight of the evidence that the finding is "clearly wrong and manifestly unjust." *Defterios v. Dallas Bayou Bend, Ltd.*, 350 S.W.3d 659, 664 (Tex. App.—Dallas 2011, pet. denied).

To preserve a complaint of factual insufficiency to support a jury finding, a party must raise the issue in the trial court in a motion for new trial. TEX. R. CIV. P. 324(b)(2); *see Cecil v. Smith*, 804 S.W.2d 509, 510 (Tex. 1991); *In re M.M.*, 2019 WL 43002225, at *6; *Defterios*, 350 S.W.3d at 664; Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L. REV. at 365 (insufficient evidence points "can only be, and must be, related to and based upon assignments of error in a motion for new trial"). Here, while Sadeghian filed a motion for new trial, he did not address the issue in his motion and thus failed to preserve the issue for our review. *See Cecil*, 804 S.W.2d at 510.

Further, even if he had preserved the issue for our review, based on the record here, we conclude the evidence is factually sufficient, as the jury's finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176; *Morris*, 334 S.W.3d at 842.

We overrule Sadeghian's third issue.

*Attorneys' Fees*

In his fourth issue, Sadeghian argues the court should reverse the award of attorneys' fees to Jaco because Jaco failed to appropriately segregate his time records between time spent on the DTPA claim against him, on which Jaco prevailed, and other claims and against other defendants, on which Jaco did not prevail. Sadeghian also argues the fee award is excessive.

–11–

We conclude Sadeghian did not preserve error on these issues on the record before us. On the day before attorneys' fees testimony began, Sadeghian's counsel raised the possibility of the need to segregate fees, but when the exhibit was offered, he did not specifically object to the lack of segregation, did not address the lack of segregation in Jaco's counsel's testimony or the related exhibit, and did not make any complaint below about excessiveness. Sadeghian's counsel made no other objections, comments, or arguments regarding excessiveness or segregation of fees despite having many other opportunities to do so, such as in his motion for partial directed verdict, during the charge conference,[7] in the hearing on Sadeghian's motion for entry of judgment, and in Sadeghian's motion for new trial. On this record, we find Sadeghian failed to preserve error on the attorneys' fees issues he raises here. TEX. R. APP. P. 33.1(a); *see Green Int'l v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) (error was waived where party did not object to failure to segregate fees between different projects and various claims and defenses in the jury question regarding fees) (citing *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988)); *Rhodes v. Kelly*, No. 05–16–00888–CV, 2017 WL 2774452, at \*14 (Tex. App.—Dallas 2017, pet. denied) (mem. op.) (party waived error on attorney's fees issues, including segregation of fees, by failing to address issue in motion for new trial or other proceedings in trial court); *Morey v. Page*, 802 S.W.2d 779, 785 (Tex. App.—Dallas 1990, no pet.) (despite party's objection to the jury question on attorney fees, party waived error by failing to object on the ground that question failed to provide for segregation of attorney fees).

We overrule Sadeghian's fourth issue.

---

[7] Neither party objected to the court's charge. In it, the jury was instructed to answer the attorneys' fees question only if they had answered "yes," to the DTPA liability question, which asked, "Did Khosrow Sadeghian engage in any unconscionable action or course of action that was a producing cause of damages to David Jaco?" The attorneys' fees question was consistent with the language used in PJC 115.60, *Texas Pattern Jury Charges: Business, Consumer, Insurance & Employment* (2016) and instructed the jury on the factors to consider under *Arthur Andersen & Co v. Perry Equip. Co.*, 945 S.W.2d 812, 818 (Tex. 1997).

## CONCLUSION

We affirm the trial court's judgment.

/Ken Molberg//
KEN MOLBERG
JUSTICE

180838f.p05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

KHOSROW SADEGHIAN, Appellant

No. 05-18-00838-CV          V.

DAVID JACO, Appellee

On Appeal from the 116th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-13719.
Opinion delivered by Justice Molberg.
Justices Bridges and Partida-Kipness
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee DAVID JACO recover his costs of this appeal from
appellant KHOSROW SADEGHIAN.


Judgment entered this 23rd day of January, 2020.