**Affirm and Opinion Filed December 15, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00072-CV**

**IN THE MATTER OF THE MARRIAGE OF OMOWUMI OWOYE AND GBENGA EMMANUEL OWOYE**

**On Appeal from the 439th Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 1-18-1697**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Garcia
Opinion by Justice Myers

Gbenga Emmanuel Owoye (Husband) appeals the final divorce decree signed after a hearing on Husband's motion for new trial. Husband brings four issues on appeal contending the trial court erred in rendering a post-answer default judgment against Husband, denying his motion for new trial, failing to render a just and right division of the marital property, and awarding Omowumi Owoye (Wife) a disproportionate share of the marital property, some of Husband's separate property, a $7,500 judgment against Husband for Wife's medical expenses, and Wife's attorney's fees. We conclude the trial court erred in awarding Wife the judgment

for medical expenses because it was not requested in Wife's pleadings. We vacate the $7,500 judgment for medical expenses, and we otherwise affirm the judgment.

## BACKGROUND

The parties were married in Nigeria in 2011. After marrying, they lived in Rockwall, Texas, in Husband's separate-property home. In 2017, Husband purchased a house in New Hampshire and moved there while Wife remained in the Rockwall house. Wife filed for divorce in December 2018. Husband filed an answer and a counterpetition for annulment and divorce.

While the divorce was pending, the trial court signed a temporary restraining order prohibiting Husband from "[c]anceling, altering, failing to renew or pay premiums on, or in any manner affecting the level of coverage that existed at the time this suit was filed of any . . . health insurance policy insuring the parties' . . . persons." However, while the divorce was pending, Husband told his and Wife's health insurer that they were divorced, and the insurer canceled its coverage for Wife. Before canceling Wife's health insurance, the insurer approved Wife's request for coverage of some medical procedures. After the insurer canceled coverage for Wife, she had to pay $7,500 for the procedures. The trial court's order also prohibited Husband from terminating or affecting the service of the utilities at the Rockwall house, yet according to Wife, Husband repeatedly had the utilities disconnected.

The trial court set the case for trial on April 17, 2019, but continued it on Husband's motion to August 30, 2019, to allow the parties to complete a mediation session. On June 25, 2019, Husband, who was then pro se after the withdrawal of his attorney, notified the trial court that he had medical issues that prevented him from traveling, and he asked that the mediation and trial be postponed to September 2019. The trial court set the case for trial on December 16, 2019.

On October 21, 2019, the trial court sent notice of the trial date to the parties. On November 4, 2019, Husband, now represented by counsel, moved for a continuance on the basis of his deteriorating health. The motion was supported by a letter from Husband's doctor in New Hampshire, dated October 16, 2019, stating Husband had been diagnosed with prostate cancer in June and "is unable to travel to Texas for court hearing at this time due to ongoing medical condition." The trial court set the motion for continuance for hearing on December 6, 2019. The hearing on that motion is not in the record, but the trial court stated at the trial that Husband's attorney appeared at the December 6 hearing before withdrawing from representing Husband the same day.

On December 16, 2019, the date set for trial, neither Husband nor an attorney representing him appeared. Wife testified at the hearing. The trial court signed a divorce decree that divided the parties' community property. The decree awarded each of the parties a fifty-percent interest in the New Hampshire house. The decree awarded the debt on both houses to Husband. The decree also awarded the vehicle

in each spouse's possession to that spouse and awarded the debt on each vehicle to the spouse possessing the vehicle. The decree awarded a fifty percent interest in the financial accounts in Husband's name to each spouse. The decree also ordered Husband to pay Wife spousal support of $2,000 per month, required him to pay Wife $30,000 as reimbursement for the $60,000 of community funds spent on Husband's separate property, and rendered a judgment of $7,500 against Husband for Wife's medical expenses incurred due to Husband's cancelation of her health insurance.

Husband filed a motion for new trial. The trial court held a hearing on the motion, and both Husband and Wife testified at the hearing. The trial court denied the motion for new trial but signed a "Modified/Corrected Decree of Divorce" that omitted the spousal support and the $30,000 reimbursement award. This amended judgment was dated incorrectly, and the trial court, within its plenary power, signed a judgment nunc pro tunc with the correct date.

## MOTION FOR NEW TRIAL

Husband's first issue states, "The trial court erred in granting a default judgment against Appellant and awarding spousal maintenance, reimbursement, medical judgment and a disproportionate share of the community property and Appellant's separate property to Appellee." However, Husband's argument in support of this issue asserts the trial court erred in denying Husband's motion for new trial because he established the factors required for a new trial set forth in

–4–

*Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. 1939). The supreme court stated in *Craddock*:

> A default judgment should be set aside and a new trial ordered in any case in which [1] the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; [2] provided the motion for a new trial sets up a meritorious defense and [3] is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

*Id.* at 126. Although *Craddock* involved a no-answer default judgment, its factors have been applied to post-answer default judgments. *LeBlanc v. LeBlanc*, 778 S.W.2d 865, 865 (Tex. 1989) (per curiam); *Ivy v. Carrell*, 407 S.W.2d 212, 213 (Tex. 1966).

Husband asserts he met the first factor, his failure to appear was not intentional or the result of conscious indifference but was due to a mistake or an accident, because he was diagnosed with prostate cancer in June 2019 and could not travel to participate in the court proceedings.[1] Wife argues that Husband's decision not to travel to Texas due to his chronic health problems was not an "accident or mistake." Husband did not state in his motion for new trial or at the hearing on the motion for new trial that his failure to appear for the trial was an accident or mistake. Instead, he stated his medical condition at the time prevented him from attending the trial.

---

[1] Husband attached to his brief several documents that were not in evidence before the trial court and were not otherwise included in the appellate record. These documents included his medical bills showing the dates of his medical appointments. He also attached a schedule of his radiation treatments. We cannot consider these documents because they were not in evidence before the trial court and are not part of the appellate record. *See Wilhoite v. Sims*, 401 S.W.3d 752, 762 (Tex. App.—Dallas 2013, no pet.).

However, for purposes of this opinion, we will presume Husband properly alleged and presented evidence that his failure to attend the trial "was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident." *Craddock*, 133 S.W.2d at 126. Accordingly, we proceed to the next factor under *Craddock*, whether Husband "set[] up a meritorious defense." *See Craddock*, 133 S.W.2d at 126.

Setting up a meritorious defense under *Craddock* does not require proof "in the accepted sense." *Dolgencorp of Tex., Inc., v. Lerma*, 288 S.W.3d 922, 928 (Tex. 2009) (quoting *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966)). This does not mean that the motion should be granted if it merely alleges that the defendant "has a meritorious defense." *Ivy*, 407 S.W.2d at 214. The motion sets up a meritorious defense if it alleges facts that in law would constitute a defense to the plaintiff's cause of action and is supported by affidavits or other evidence providing prima facie proof that the defendant has such a defense. *Dolgencorp*, 288 S.W.3d at 928; *Ivy*, 407 S.W.2d at 214.

Husband's motion for new trial asserted the following constituted meritorious defenses:

> disproportionate award of assets to Wife and no evidence supporting a disproportionate award;
>
> award of Husband's separate property to Wife;
>
> Husband "had a meritorious defense to the division of the debt";

Wife "provided testimony on December 16, 2019, under oath to this Court that was untrue";

Husband "had a meritorious defense to the award of spousal maintenance";

a divorce case in Nigeria is pending that has been on file since September 14, 2015; and

"there is a pending U.S. Permanent Residence Support Revocation Petition Case filed with the Unites States Citizenship and Immigration Services for fraudulent marriage that the Petitioner has perpetrated on the Respondent."

Husband verified the motion but did not attach an affidavit providing facts in support of these allegations.[2]

Concerning the allegation of disproportionate distribution of the community property, the issue is not whether the community property was divided disproportionately but is whether the division was just and right. *See* TEX. FAM. CODE ANN. § 7.001. The property division need not be equal, and a trial court may consider many factors when exercising its broad discretion to divide the marital property. *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 384 (Tex. App.— Dallas 2013, no pet.). Such factors include the nature of the community property, the relative earning capacity and business opportunities of the parties, the parties' relative financial condition and obligations, the parties' education, the size of the parties' separate estates, the age, health, and physical condition of the parties, fault

---

[2] For purposes of this appeal only, we will presume that these allegations, except where we state otherwise, constitute affirmative defenses. We do not hold that these allegations are, in fact, affirmative defenses to a suit for dissolution of marriage and division of community property.

in breaking up the marriage, the benefit the innocent spouse would have received had the marriage continued, and the probable need for future support. *Id.*

In this case, the record shows a disproportionate award to Wife in at least two ways: the Court divided all assets equally except for Wife's financial accounts, which were awarded entirely to her; and the Court's division of debt, which made Husband responsible for the debt secured by the Rockwall and New Hampshire houses even though Wife had a fifty percent interest in the New Hampshire house.

Wife pleaded in her petition that she should receive a disproportionately greater share of the marital estate and listed fourteen reasons including Husband's fault in the breakup of the marriage, their disparity of earning power, the health of the spouses, and Wife's need for future support. At the trial, Wife testified Husband treated her cruelly and that he had threatened to kill her. She also said Husband got her fired from her job at Lowe's when he falsely told her manager that she was using the office telephone to threaten him. She also testified that Husband canceled her health insurance preventing her from getting medical treatment she needed, and that he repeatedly had the utilities shut off in the house, including during a period of below-freezing temperatures. She testified she could not maintain full-time employment due to her health but had a seasonal job at Costco. She testified she had a sore stomach that prevented her from lifting heavy things and that she needed an operation that she could not afford because Husband had canceled her health insurance. She stated Husband earned over $120,000 per year, had a 401K,

–8–

traditional and Roth IRAs, and brokerage accounts, while she had only small balances in checking and savings accounts, which she used to pay her bills, and that all her money came from her job. The trial court could have interpreted her testimony at the trial as showing her income and assets were well below Husband's and that she had a need for future support. This evidence supported a disproportionate award for Wife. At the hearing on the motion for new trial, Husband presented no evidence that Wife's testimony at the trial about his cruel treatment, her lesser earning power, her lesser assets, and her health situation were false. We conclude Husband failed to set up the disproportionate award of the marital estate as an affirmative defense.

Husband also asserts he set up the defense of the trial court awarding his separate property to Wife. "Parties claiming certain property as their separate property have the burden of rebutting the presumption of community property." *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011). Meeting this burden requires tracing and clearly identifying the property in question as separate by clear and convincing evidence. *Id.*; *see* FAM. § 3.003(b) ("The degree of proof necessary to establish that property is separate property is clear and convincing evidence."). At the hearing on the motion for new trial, no evidence was admitted that showed any property awarded to Wife was Husband's separate property. During the hearing, Husband tried to testify that certain of his financial accounts were his separate property and that the New Hampshire house was purchased with funds that

were his separate property, but the trial court excluded this evidence because it was not disclosed in pre-trial discovery. Although Husband testified that he established the accounts before he married Wife, he presented no evidence that the financial accounts were not intermingled with interest or dividends earned during the marriage, which are community property. *See In re Marriage of Born*, No. 06-08-00066-CV, 2009 WL 1010876, at *1, 2–3 (Tex. App.—Texarkana Apr. 16, 2009, no pet.) (mem. op.) (concluding that spouse who did not detail all possible transactions or all income earned on, and reinvested in, mutual fund accounts and certificate of deposit account during marriage had failed to trace, by clear and convincing evidence, his separate-property interest). Husband cites to a hearing on temporary orders where Wife's attorney stated that the vehicle used by Wife (and that was later awarded to her in the divorce decree) was Husband's separate property. However, that hearing was not made part of the evidence at the trial or at the hearing on the motion for new trial,[3] and no evidence was presented at the trial or the hearing

---

[3] The trial court stated at the hearing on the motion for new trial that the court would "take judicial notice of the entire file of the court." A court may take judicial notice of a file to show that documents are part of the court's file, that they were filed on a certain date, and that they were before the court at the time of the hearing. *In re C.S.*, 208 S.W.3d 77, 81 (Tex. App.—Fort Worth 2006, pet. denied). Taking judicial notice of "the entire file" does not take judicial notice of testimony and statements at prior hearings. It is inappropriate for a trial judge to take judicial notice of testimony from prior hearings or a prior trial of the same case. *Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.). That is because "trial testimony is a mutable product of human memory and subject to different interpretations. It does not carry the high degree of indisputability required to justify taking judicial notice." *Garza v. State*, 996 S.W.2d 276, 280 (Tex. App.—Dallas 1999, pet. ref'd) (quoted in *Guyton*, 332 S.W.3d at 693). For statements in a prior hearing to be considered, the transcript of the prior hearing must be properly authenticated and entered into evidence. *In re C.H.C.*, 396 S.W.3d 33, 56 (Tex. App.—Dallas 2013, no pet.). Husband did not provide and offer into evidence a transcription of the pretrial hearing on temporary orders. Therefore, Wife's attorney's statements at the pretrial hearing were not in evidence at the trial or at the hearing on the motion for new trial.

–10–

on the motion for new trial that the vehicle was not community property. We conclude Husband did not set up as a defense that the trial court had awarded his separate property to Wife.

Concerning the grounds that Husband "had a meritorious defense to the division of the debt" and Wife "provided testimony on December 16, 2019, under oath to this Court that was untrue," neither the motion for new trial nor the testimony at the hearing on the motion for new trial explained what the affirmative defense to the division of debt was or what testimony of Wife was untrue. Therefore, these matters were not set up as a defense.

Whether Husband had a meritorious defense to the awards of spousal maintenance and $30,000 reimbursement are moot because the trial court amended the decree removing those awards.

Husband also argued the trial court erred in granting the divorce because there was a pending divorce proceeding in Nigeria when Wife filed for divorce in Texas. The trial court excluded Husband's evidence of the Nigerian divorce proceeding because the documents Husband offered into evidence were not properly authenticated. Husband does not assert on appeal that the trial court erred in excluding the documents. Therefore, Husband's asserted defense was not supported by any evidence.

Husband also asserted as a defense, "there is a pending U.S. Permanent Residence Support Revocation Petition Case filed with the Unites States Citizenship

–11–

and Immigration Services for fraudulent marriage that the Petitioner has perpetrated on the Respondent." At the hearing on the motion for new trial, Husband presented no evidence in support of this assertion, nor did he explain how the marriage was allegedly fraudulent. Wife testified at the trial that she is a United States citizen, and Husband presented no evidence at the hearing on the motion for new trial that she was a permanent resident and not a citizen. Nor did he present evidence of any proceeding to revoke her citizenship or her right to reside in the United States. Therefore, this matter was not set up as a defense.

On appeal, Husband argues he had another meritorious defense: his health condition that prevented him from traveling. Although his health condition might be grounds for a continuance, it is not a fact "that in law would constitute a defense to the plaintiff's cause of action," and it is not an affirmative defense under *Craddock*. *See Dolgencorp*, 288 S.W.3d at 928; *Ivy*, 407 S.W.2d at 214.

Husband also argues he did not have to set up a meritorious defense because the judgment awarded relief that Wife did not request in her petition. We address this subject in Husband's third issue.

We overrule Husband's first issue.

### ABUSE OF DISCRETION IN PROPERTY DIVISION

In his second issue, Husband contends the trial court abused its discretion as set out in *Lindsey v. Lindsey*, 965 S.W.2d 589 (Tex. App.—El Paso 1998, no pet.), by awarding Wife a disproportionate share of the community property and awarding

–12–

all the debt to Husband.  The court in *Lindsey* stated that the abuse-of-discretion standard has been distilled into a two-pronged inquiry:  (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion.  *See id.* at 592; *see also In re M.A.M.*, 346 S.W.3d 10, 14 (Tex. App.—Dallas 2011, pet. denied) (citing *Lindsey*).

In a divorce decree, "the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage."  FAM. § 7.001. Citing Black's Law Dictionary, the supreme court has defined "just" as meaning "legally right; lawful; equitable"; "right" as meaning "that which is proper under law, morality, or ethics"; and "due regard" as meaning "the attention, care, or consideration that is just, proper, regular, and reasonable."  *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018) (plurality opinion) (footnotes and internal punctuation omitted).  "In the end, the court is to do complete equity as between the husband and wife and the children, having due regard to all obligations of the spouses and to the probable future necessities of all concerned."  *Id.*

When exercising its broad discretion to divide the marital property, the trial court may consider many factors, including the nature of the marital property, the relative earning capacity and business opportunities of the parties, the parties' relative financial condition and obligations, the parties' education, the size of the separate estates, the age, health, and physical conditions of the parties, fault in

breaking up the marriage, the benefit the innocent spouse would have received had the marriage continued, and the probable need for future support. *See Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981); *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 384 (Tex. App.—Dallas 2013, no pet.).

We review the trial court's division of a community estate for an abuse of discretion. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *LaFrensen v. LaFrensen*, 106 S.W.3d 876, 877 (Tex. App.—Dallas 2003, no pet.).

Husband argues the trial did not provide the trial court sufficient information to exercise its discretion in the division of property and cites cases in support of that proposition. In *Smith v. Hickman*, No. 04-19-00182-CV, 2020 WL 1442663, at *2 (Tex. App.—San Antonio Mar. 25, 2020, no pet.) (mem. op.), the court of appeals reversed the trial court's division of property following a default judgment because the trial court did not have sufficient information to exercise its discretion. The court of appeals stated:

> In this case, the only evidence presented to the trial court was Hickman's testimony which spanned six pages. His testimony consisted mostly of affirmative "yes" answers to questions regarding the terms outlined in the proposed divorce decree. No evidence was presented regarding the value of the community estate or any of its component parts, such as accounts, properties, vehicles, or debts. With regard to the nature of the division, the only evidence presented was Hickman's conclusory "I do" when asked whether he believed the

–14–

proposed decree contained a just and right division of the community estate.

*Id.* Husband argues that *Smith* and *O'Neal v. O'Neal*, 69 S.W.3d 347 (Tex. App.—Eastland 2002, no pet.), require that the record contain evidence as to the value of any property to be divided. We disagree. Those cases stand for the proposition that the record must contain more evidence than a witness's testimony that the property division in a proposed decree is just and right. *See Smith*, 2020 WL 1442663, at *2; *O'Neal*, 69 S.W.3d at 349–50. Although the court in *Smith* observed that there was no evidence of the value of the marital assets, the court did not state that evidence of value was always necessary for the trial court to make a just and right division. For example, a division of property that awards one-half of the assets and debt to one spouse and the other half of the assets and debt to the other spouse is an equal division of the marital estate regardless of the size of the estate.

Wife presented more testimony than merely stating the division of property set forth in a proposed decree was just and right. She described the assets as a 401K and pension plan with Husband's current employer and previous employer, a "Fidelity Roth IRA and a Fidelity traditional IRA, and . . . a Fidelity brokerage account." She testified that Husband had bank accounts with Bank of America, Chase Bank, and Citibank, and that these accounts included checking and money market accounts as well as certificates of deposit. She testified that Husband purchased the New Hampshire house during the marriage and that "he put about $132,000 down on that house" using presumably community assets. Wife presented

–15–

substantially more evidence than what appears to have been presented in *Smith* and *O'Neal*. *Cf. Smith*, 2020 WL 1442663, at *2; *O'Neal*, 69 S.W.3d at 349–50.

Husband also argues "there was no testimony regarding the debt, [with] the exception of what was laid out in the proposed decree. [sic]" This is not correct. Wife testified the debt on the Rockwall house was about $80,000 in 2017 and that the principal on that debt was reduced by about $550 per month. She testified that there was a mortgage on the New Hampshire house and that she wanted the court to order Husband to pay that mortgage.[4] She also testified that she wanted Husband to be awarded the debt on whatever vehicle he was awarded as well as any debt on his credit cards. Husband did not explain why this evidence left the court without sufficient information to exercise its discretion to make a just and right division of the community estate.

Husband also argues Wife was granted the divorce on a ground for which she did not plead. In her petition, Wife pleaded for divorce because:

> The marriage has become insupportable because of discord or conflict of personalities between Wife and Husband that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation.

> Husband is also guilty of cruel treatment toward Wife of a nature that renders further living together insupportable.

---

[4] Husband states in his brief that Wife intended to move to New Hampshire, that she signed a lease in New Hampshire, later broke the lease, and incurred debt of $4,125. In support of these statements, Husband cites to documents that are not in the record but are attached to his brief. We cannot consider documents that are attached to briefs but that are not part of the appellate record. *See Wilhoite*, 401 S.W.3d at 762.

*See* FAM. §§ 6.001, 6.002 (insupportability and cruelty as grounds for divorce). In the divorce decree, the trial court found these grounds and:

> finds Husband left Wife with the intent to abandon Wife and remained away for at least one year.

*See id.* § 6.005 (abandonment as ground for divorce). The judgment must conform to the pleadings, *see* TEX. R. CIV. P. 301, and the trial court erred in granting the divorce on the ground of abandonment because that ground was not pleaded. However, this error is not reversible unless it probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1). In this case, there were two other pleaded grounds for divorce: insupportability, and the "fault" ground of cruel treatment. Husband argues the supreme court in *Young v. Young*, 609 S.W.2d 758 (Tex. 1980), held that the property division "should not be a punishment for the spouse at fault." *Id.* at 762. However, the same opinion states, "we agree with the trial court that fault may be a consideration to be weighed in the division of property." *Id.* In this case, nothing shows the trial court used the property division to punish Husband for his cruel treatment or abandonment of Wife; instead, it appears fault was a consideration weighed by the court in dividing the community property, as well as the other considerations listed above. Accordingly, the record does not show that the court's improper finding of abandonment probably caused the rendition of an improper judgment, and we conclude no reversible error is shown.

Husband also argues the evidence does not support a finding of cruel treatment because the only evidence of cruel treatment was his having the utilities at the

Rockwall house turned off. He argues he did this because, pursuant to temporary orders, he did not have to pay for the utilities after a certain date. However, the testimony at the trial was not that he did not pay for the utilities but was that he had the utilities "cut off," which was in violation of the court's order prohibiting the parties from "[t]erminating or in any manner affecting the service of water, electricity, gas," etc. Wife testified that she paid to have the utilities reconnected, but Husband had them cut off again. Even if having the utilities cut off was not cruel treatment, there was other evidence of cruel treatment in the record that supported the trial court's finding. Wife testified at the trial that Husband had threatened her life, which made her afraid to work late. She also testified Husband got her fired from her job at Lowe's by falsely telling her manager that Wife was using a telephone at Lowe's to threaten him. She also testified that Husband had her removed from their health insurance plan by telling the insurer that their divorce was final when it was not. Even if the evidence were not sufficient to support the finding of cruel treatment, the evidence at the trial supported other grounds for awarding Wife a disproportionate share of the property, including the disparity of the parties' earning potential and Wife's health issues that interfered with her employment prospects.

We conclude Husband has not shown the trial court abused its discretion in the division of property by awarding Wife a disproportionate share of the community estate. We overrule Husband's second issue.

–18–

## MEDICAL JUDGMENT

In his third issue, Husband contends the trial court erred in awarding Wife a judgment for medical expenses of $7,500. Husband contends the judgment was not supported by the pleadings.

In a post-answer default case, a plaintiff cannot obtain relief on a cause of action that is not contained in the plaintiff's pleadings. *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979).

Wife describes the issue of the lack of a pleading supporting the medical judgment as "a hyper-technical complaint." She asserts that the judgment for medical expenses is supported by her request for temporary orders that Husband reinstate her health care insurance, the trial court's order that the parties not interfere with one another's health insurance, and by Wife's "general pleadings" and the evidence.

Wife's petition included a request for a temporary order requiring Husband to reinstate Wife's health insurance and to timely pay all premiums until a final decree is signed. She also requested an injunction prohibiting Husband from canceling, altering, or failing to pay premiums on Wife's health insurance. However, Wife did not plead that she incurred medical expenses resulting from Husband canceling her health insurance, nor did she request in the petition an award of damages for medical expenses. We conclude Wife's pleading did not support the judgment for her medical expenses.

Wife appears to argue that the trial court may have awarded Wife the $7,500 judgment for medical expenses as a sanction against Husband. Some evidence shows Husband may have violated the trial court's temporary order not to cancel Wife's health insurance. But before the trial court could impose sanctions for violating that order, the trial court had to provide Husband with notice and an adequate opportunity to respond. *See In re Champagne*, No. 03-21-00426-CV, 2021 WL 4976719, at *2 (Tex. App.—Austin Oct. 27, 2021, orig. proceeding) (mem. op.). The record contains no notice to Husband of a request from Wife for sanctions against Husband for violating the order, and no notice of the court's intent to impose sanctions for violating the order. Nor does the record show Husband was provided any opportunity to respond to allegations that he violated the order. Therefore, we conclude the trial court abused its discretion by imposing the judgment for medical expenses as a sanction for violating the court's order not to cancel Wife's health insurance. *See id.* at *2–3.

We sustain Husband's third issue.

### ATTORNEY'S FEES

In his fourth issue, Husband contends the trial court erred in ordering him to pay Wife's attorney's fees of $16,200. "In a suit for dissolution of marriage, the court may award reasonable attorney's fees and expenses." FAM. § 6.708(c).

Before trial, Wife filed a motion to equalize attorney's fees. In the motion, Wife alleged Husband had paid his multiple attorneys approximately $30,000. She

–20–

also alleged that Husband's changing attorneys multiple times had delayed the proceeding and increased the legal fees. She stated she had paid her attorney an initial retainer of $3,500, all of which had been used, and that she "has a balance due of $11,200." Wife asked that the court, "[i]n the interest of fairness and equity, . . . order Husband to pay Wife's counsel . . . attorney's fees in the amount of $30,000 in order to equalize the attorney's fees and level the playing field between the parties in this matter."

On December 6, 2019, ten days before the trial, the court heard the motion to equalize attorney's fees. The court signed an order on the motion on December 13, 2019, three days before the trial. The order states the court heard the motion and that both parties appeared through counsel and announced ready. The order then states:

> After considering the pleadings, evidence and argument of counsel, the court finds Wife paid her counsel an initial retainer of $3,500.00, which has been used in total, and has a balance due of $11,200.00. The Court further finds Wife is not in control of any community assets with which to pay further attorney's fees and expenses.
>
> IT IS ORDERED that [Wife's attorney] is awarded judgment in the amount of $16,200.00 for reasonable attorney's fees, expenses, and costs, with interest at 6.0% per year compounded annually from the date the judgment is signed until paid. The judgment, for which let execution issue, is awarded against [Husband], Respondent, and Respondent is ORDERED to pay those fees, expenses, costs, and interest, by cash, cashier's check, or money order directly to [Wife's attorney] by 2:00 p.m. on December 11, 2019.

At the trial on December 16, 2019, Wife testified that Husband had not yet paid the attorney's fees. Wife testified that she wanted the court to incorporate the attorney's

fees order into the divorce decree and require Husband to pay $16,200 toward her attorney's fees.

The divorce decree states:

The Court finds Wife incurred attorney's fees, expenses, and costs, in the amount of $16,200 for representation in this matter and that such attorney's fees, expenses, and costs are reasonable and necessary. The Court further finds Husband was previously ordered to pay such fees to Wife, through counsel, and failed to timely pay such fees, expenses, and costs. Accordingly, IT IS ORDERED that [Wife's attorney] is awarded judgment in the amount of $16,200.00 reasonable attorney's fees, expenses, and costs, together with interest at 6.0% per year compounded annually from the date the judgment is signed until paid.

On appeal, Husband argues there is no evidence of the actual attorney's fees Wife incurred, nor is there any evidence to support the award of attorney's fees in this case. Husband, as the appellant, had the burden to bring forward an appellate record showing reversible error. *Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex. 1991) (per curiam); *Uhmeh v. Rivas*, No. 05-15-00784-CV, 2016 WL 3442378, at *1 (Tex. App.—Dallas June 22, 2016, no pet.) (mem. op.). Review of the sufficiency of the evidence requires a complete reporter's record. *Schafer*, 813 S.W.2d at 155; *Sareen v. Sareen*, 350 S.W.3d 314, 317 (Tex. App.—San Antonio 2011, no pet.). When the reporter's record is incomplete, the reviewing court presumes the missing testimony supports the trial court's judgment.[5] *Schafer*, 813 S.W.2d at 155;

---

[5] Under Rule of Appellate Procedure 34.6(c), a party may appeal without a complete record by designating certain portions of the reporter's record, and the appellate court must presume the incomplete record is complete for purposes of the appeal. *See* TEX. R. APP. P. 34.6(c). Strict compliance with the rule is required for the presumption to apply. *$4,310 in U.S. Currency v. State*, 133 S.W.3d 828, 829 (Tex. App.—Dallas 2004, no pet.). Husband did not purport to follow rule 34.6(c).

*Birnbaum v. Law Offices of G. David Westfall, P.C.*, 120 S.W.3d 470, 476–77 (Tex. App.—Dallas 2003, pet. denied). "This is because without a complete reporter's record, it is impossible to review all the evidence presented to the trier of fact or to apply the appropriate sufficiency standards." *Sareen*, 350 S.W.3d at 317.

In this case, there is no reporter's record for the December 6, 2019 hearing on the motion to equalize attorney's fees. The order on the motion states the trial court considered evidence. There was no evidence attached to the motion, so the only evidence the court could have considered had to have been presented at the hearing. In the order, the court found the award of $16,200 for Wife's attorney's fees, costs, and expenses was reasonable. With no reporter's record of the hearing, we must presume the evidence presented at the hearing supports the trial court's judgment. *Schafer*, 813 S.W.2d at 155; *Birnbaum*, 120 S.W.3d at 476–77.

We overrule Husband's fourth issue.

## CONCLUSION

We modify the judgment and vacate the $7,500 award of medical expenses, and we affirm the trial court's judgment as modified.

/Lana Myers/
_____
LANA MYERS
JUSTICE

200072f.p05

–23–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE MATTER OF THE
MARRIAGE OF GBENGA
EMANUEL OWOYE AND
OMOWUMI OWOYE

No. 05-20-00072-CV

On Appeal from the 439th Judicial
District Court, Rockwall County,
Texas
Trial Court Cause No. 1-18-1697.
Opinion delivered by Justice Myers.
Justices Molberg and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial
court is **MODIFIED** as follows:

> the award of judgment to Wife against Husband for all health, dental
> and vision expenses in the amount of $7,500 is **VACATED**.

It is **ORDERED** that, as modified, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee OMOWUMI OWOYE recover her costs of
this appeal from appellant GBENGA EMANUEL OWOYE.

Judgment entered this 15th day of December, 2021.